JOHNNIE B. KNOX, JR., *et al.*, Plaintiffs-Appellants, *v.* NORTH AMERICAN CAR CORPORATION, Defendant-Appellee.

First District (3rd Division)    No. 78-1114

Opinion filed January 9, 1980.

SIMON, J., specially concurring.
RIZZI, J., dissenting.

Leonard M. Ring, of Leonard M. Ring & Associates, of Chicago, for appellants.

Wildman, Harrold, Allen & Dixon, of Chicago (Howard T. Brinton, Miles J. Zaremski, and William D. Serwer, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

On February 2, 1977, plaintiffs, Johnnie B. Knox and Irene Peavy Knox, filed a two-count complaint against defendant, North American Car Corporation. Plaintiffs sought damages for personal injuries allegedly resulting from a breach of implied warranty under the Uniform Commercial Code (hereinafter U.C.C.) (Ill. Rev. Stat. 1977, ch. 26, par. 1—101 *et seq.*). In count I, Johnnie Knox sought damages for injuries sustained in an accident which occurred in New Orleans, Louisiana, on November 13, 1973. In count II, Irene Knox sought damages for loss of her husband's consortium. Defendant filed a motion to strike and dismiss plaintiff's complaint on the ground that it was barred by the statute of limitations. The trial court granted defendant's motion, and plaintiffs appeal. The pleadings reflect the following well-pleaded facts.

Defendant is a Delaware corporation having its principal place of business in Chicago, Illinois. It leases boxcars to various railroads and corporations engaged in shipping commodities by rail. On March 1, 1966, North American leased a boxcar to the Hershey Foods Corporation, a Delaware corporation, which lease was in effect at the time of plaintiff's injury. Hershey's duties under the lease consisted of informing defendant of the movement of the boxcar, the dates of loading, the type of commodities shipped, and the boxcar's final destination and routing. Hershey was required to provide defendant with all other information concerning the boxcar received from the various railroad companies or other sources. Defendant received a mileage charge from all railroad

companies which used the boxcar. The lease provided that defendant would pay for the maintenance and repair of the boxcar. Hershey was allowed to make only running repairs unless it obtained defendant's written consent. Repairs to the floor of the boxcar would not fall under the category of running repairs.

On May 30, 1973, defendant was notified by Hershey that the floor of the boxcar was damaged and in need of repair. Reading Railroad Company delivered the boxcar to Hershey on October 30, 1973. At that time, there was still a hole in the floor of the boxcar. In its damaged condition, the boxcar was loaded by Hershey employees and consigned to the Great Atlantic & Pacific Tea Company in New Orleans, Louisiana. Plaintiff Johnnie Knox, a Louisiana resident and an A&P employee, was injured on November 13, 1973, when a wheel of the forklift truck he was driving into the boxcar fell into the hole in the floor. On November 19, 1973, the boxcar was repaired.

Plaintiff's suit was based on several provisions of the U.C.C. In requesting recovery under the U.C.C., plaintiffs sought the protection of the four-year statute of limitations applicable to breaches of an implied warranty. (Ill. Rev. Stat. 1977, ch. 26, par. 2—725(1).) Plaintiff sought to qualify as third-party beneficiary of an implied warranty under sections 2—315 and 2—318 of the U.C.C., which provide:

"§2—315. Implied Warranty: Fitness for Particular Purpose. Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified * * * an implied warranty that the goods shall be fit for such purpose."

"§2—318. Third Party Beneficiaries of Warranties Express or Implied.

A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this Section." Ill. Rev. Stat. 1977, ch. 26, pars. 2—315, 2—318.

Defendant's motion to dismiss plaintiffs' complaint alleged their cause of action was barred by the statute of limitations. Defendant maintained that Louisiana law controlled the present action, and the period of limitation for actions involving personal injuries in Louisiana is one year. (La. Civil Code, arts. 3536, 3537 (West 1973).) Defendant argued that, even if Illinois law controlled, the statute of limitations for

personal injury actions in Illinois is two years. (Ill. Rev. Stat. 1977, ch. 83, par. 15.) It further maintained that the four-year limitations period provided for in the U.C.C. was inapplicable.

The trial court held that Illinois had jurisdiction of the matter and its law governed since defendant had its principal place of business here. The court ruled, however, that the U.C.C. was inapplicable to the case because the lease transaction was not a sale within the provisions of section 2—315 and because plaintiff was not a proper beneficiary under section 2—318. The court found, therefore, that since the four-year period of limitations found in article 2 was inapplicable, plaintiffs' cause of action for personal injuries was barred by the statutory two-year period.

Plaintiffs initially contend that the trial court erred in finding that article 2 of the U.C.C. was inapplicable to the lease transaction here. Citing *Walter E. Heller & Co. v. Convalescent Home* (1977), 49 Ill. App. 3d 213, 365 N.E.2d 1285, plaintiffs maintain that Illinois has joined a growing number of jurisdictions which apply the provisions of article 2 to lease transactions. In *Heller,* a matter involving an equipment lease of computers, the lessee defended against the lessor's action for rental payments on the ground that the lessor had breached the warranties of merchantability and fitness for a particular purpose imposed by article 2. This court held that article 2 should not be applied *in toto* to lease transactions. It ruled, however, that certain aspects of those sections dealing with warranties could be applied by analogy. The *Heller* court stated at page 219: "[W]e will analogize the provisions of article 2 to equipment leases only when the case involves the same considerations which gave rise to the Code's provisions and the analogy is not rebutted by the specific circumstances of the case." See also *Sawyer v. Pioneer Leasing Corp.* (1968), 244 Ark. 943, 428 S.W.2d 46; *W.E. Johnson Equipment Co. v. United Airlines, Inc.* (Fla. 1970), 238 S. 2d 98; *Glenn Dick Equipment Co. v. Galey Construction, Inc.* (1975), 97 Idaho 216, 541 P.2d 1184; *Hertz Commercial Leasing Corp. v. Transportation Credit Clearing House, Inc.* (1969), 59 Misc. 2d 226, 298 N.Y.S. 2d 392, *rev'd on other grounds* (1970), 64 Misc. 2d 910, 316 N.Y.S.2d 585.

Some jurisdictions have held that since article 2 expressly refers to sales, it is never applicable to lease transactions. (*DeKalb Agresearch, Inc. v. Abbott* (N.D. Ala. 1974), 391 F. Supp. 152, *aff'd* (5th Cir. 1975), 511 F.2d 1162; *Martin v. Ryder Truck Rental, Inc.* (Del. 1976), 353 A.2d 581; *Mays v. Citizens & Southern National Bank* (1974), 132 Ga. App. 602, 208 S.E.2d 614; *Bona v. Graefe* (1972), 264 Md. 69, 285 A.2d 607.) Other jurisdictions have held that despite its language, article 2 is directly applicable in its entirety to leases. *In re Vaillancourt* (D. Me. 1970), 7 U.C.C. Rep. Serv. 748; *Owens v. Patent Scaffolding Co.* (N.Y. Sup. Ct.

1974), 77 Misc.2d 992, 354 N.Y.S.2d 778, *rev'd on other grounds* (1975), 50 App. Div. 2d 866, 376 N.Y.S.2d 948.

We adhere to the principles enunciated in *Heller*, and we believe the application of selected provisons of article 2 to leases by analogy is the most well-reasoned approach. Although leases may be as prevalent as sales in the commercial world, they are a distinct type of transaction. Leases may differ significantly from sales in the area of risk of loss and the duties of maintenance and repair. A refusal to apply article 2 directly and *in toto* to leases avoids the situation in which language particularly applicable to sales must suffer a strained interpretation in order to cover a lease transaction. (See Ill. Rev. Stat. 1977, ch. 26, pars. 2—301, 3—312, 2—401.) We thus must examine the present lease transaction to determine whether defendant impliedly warranted that the boxcar would be fit for a particular purpose under section 2—315 and, if so, whether plaintiff, Johnnie Knox, falls within the class of the third-party beneficiaries of such warranty under section 2—318.

Plaintiffs rely primarily upon *Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550, for the propositions that the transaction in the present case carried with it an implied warranty under section 2—315 and that Johnnie Knox qualifies as a beneficiary of the warranty under section 2—318. In *Berry*, plaintiff sought damages for injuries sustained as a result of ingesting an oral contraceptive manufactured by defendant. Our supreme court held that the sale of the contraceptive carried with it an implied warranty under section 2—315. It was further held that even though there was no privity of contract between plaintiff and defendant, a remote manufacturer, plaintiff nevertheless qualified as a beneficiary of the warranty since section 2—318 was neutral on the question of the necessity of privity between parties in the distributive chain and the requirement of privity, in the context of tort liability, had been abolished. *Berry* is distinguishable, first, because the transaction there was a sale of goods governed directly by article 2. In contrast, we have held that since the present case involves a lease, the provisions of article 2 are applicable, where appropriate, only by analogy. Secondly, plaintiff in *Berry* was a purchaser of the product and was thus in vertical privity with the manufacturer. Conversely, Johnnie Knox is not a party in the distributive chain, but stands in horizontal privity to defendant. As we shall discuss more fully, section 2—318 sets a definite limit on a seller's liability to one who stands in horizontal privity, a limitation with which the court in *Berry* was not concerned. We do not believe *Berry* controls the disposition of this matter.

In our view, the well-pleaded facts contained in count I of the complaint support the conclusion that defendant impliedly warranted

that the boxcar would be fit for shipping the products of Hershey, its lessee. The lease arrangement placed the duties of maintenance and repair upon defendant. Hershey was permitted to make only "running repairs." Thus it is evident that Hershey, even more so than in a sale situation, relied upon defendant's undertaking to provide a boxcar which was safe and suitable for the purpose contemplated by the parties to the lease. Such an undertaking on the part of the defendant lessor gives rise to a contractual implied warranty of fitness analogous to that applicable to sales under section 2—315. See *Walter E. Heller & Co. v. Convalescent Home.*

Having so decided, we must address the issue whether Johnnie Knox can qualify, under section 2—318, as a third-party beneficiary of defendant's implied warranty. Plaintiffs concede that Johnnie Knox does not fall within the literal language of section 2—318 which includes as beneficiaries "any natural person who is in the family or household of his buyer or who is a guest in his home * * *." Plaintiffs, however, point to subsection 3 of the Uniform Commercial Code Comment to section 2—318 which states:

> "This section expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. Beyond this, the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain." (Ill. Ann. Stat., ch. 26, par. 2—318, Uniform Commercial Code Comment, at 265 (Smith-Hurd 1963).)

Plaintiffs maintain that this language manifests an intent on the part of the draftees to enable a court to extend the protection of section 2—318 beyond the classes of persons specifically enumerated therein. Plaintiffs further argue that a similar result should be reached under section 2—318 notwithstanding its language because any requirement of privity in non-Code cases has been abolished in Illinois. (*Buehler v. Whalen* (1977), 70 Ill. 2d 51, 374 N.E.2d 460; *Genaust v. Illinois Power Co.* (1974), 23 Ill. App. 3d 1023, 320 N.E.2d 412, *aff'd* (1976) 62 Ill. 2d 456, 343 N.E.2d 465; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.) We do not agree.

■■ Initially, we believe plaintiffs have misinterpreted the thrust of the above-quoted comment to section 2—318. Section 2—318 defines the classes of persons entitled to benefit from implied warranties who stand in "horizontal" privity (as opposed to "vertical" privity) to the last purchaser, or in the present case, the lessee, in the distributive chain. "Horizontal" privity in its broadest sense, includes any person who uses the product. "Vertical" privity includes all parties up the distributive chain from the immediate seller (*Omaha Pollution Control Corp. v.*

*Carver-Greenfield* (D. Neb. 1976), 413 F. Supp. 1069.) Since section 2—318 does not address itself to vertical privity, liability of a seller under that section to those who stand in vertical privity may be co-extensive with the liability imposed in non-U.C.C. cases. In other words, section 2—318 was meant to act as a limitation only upon a seller's liability for breach of warranty to those who stand in horizontal privity, but not to those who stand in vertical privity. (*Omaha Pollution Control Corp. v. Carver-Greenfield.*) We cannot disregard or enlarge the express limitations of section 2—318.

■ Moreover, at the time section 2—318 was enacted, the legislature considered alternative language. The alternatives considered and rejected read as follows:

"Alternative B. A seller's warranty whether express or implied extends to any natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section."

"Alternative C. A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume, or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section with respect to injury to the person of an individual to whom the warranty extends."

It is apparent that the classes of third-party beneficiaries of warranties under the rejected alternatives are much broader than they are under the language adopted in Illinois. By electing to enact what was then Alternative A for section 2—318 in Illinois, we believe the legislature consciously chose to limit a seller's liability for breach of warranty to the specific classes enumerated therein. Thus, since section 2—318 is applicable to the present case by analogy, plaintiffs must demonstrate that Johnnie Knox occupies a position in relation to Hershey analogous to that of a family member or guest of a purchaser.

■■ An employee of the last purchaser of goods may qualify as a third-party beneficiary under section 2—318. (*McNally v. Nicholson Manufacturing Co.* (Me. 1973), 313 A.2d 913.) The theory underlying this principle is that the employee stands in such relationship to his employer, the last purchaser, that he is the functional equivalent of a guest or family member. Were we here concerned with an employee of Hershey, the foregoing case would be persuasive authority for the result urged by plaintiffs. Johnnie Knox, however, is not an employee of the lessee; he is an employee of A & P. Consequently, he is twice-removed from the last party in the distributive chain. His position relative to Hershey is the equivalent, in terms of the classes of persons enumerated in section 2—

318, of a guest or family member in the household of a borrower of the product from the last purchaser. In a sale situation, we do not believe section 2—318 would give a person who stands in this relationship to the last purchaser the status of a third-party beneficiary in Illinois. Likewise, by analogy, we do not believe Johnnie Knox may take advantage of section 2—318's provision to become such a beneficiary. See *Dickey v. Lockport Prestress, Inc.* (1976), 52 App. Div. 2d 1075, 384 N.Y.S.2d 609.

In view of our holding that section 2—318 is inapplicable to the present case since Johnnie Knox does not qualify as a third-party beneficiary of defendant's implied warranty, it follows that the four-year statute of limitations for actions for breach of warranty found in the U.C.C. is also inapplicable. Johnnie Knox's cause of action, therefore, is subject to the two-year statute of limitations applicable to actions for personal injuries. (Ill. Rev. Stat. 1977, ch. 83, par. 15.) Since the suit was filed more than two years after the cause of action arose, it is barred, and the trial court properly dismissed count I of the complaint.

Because our holding is dispositive of the propriety of the dismissal of count I, it is unnecessary to consider the contention of defendant that, under the "most significant relationship" test, Louisiana should be deemed the State in which the cause of action arose.

Plaintiffs finally contend that even if Johnnie Knox's suit for personal injuries is barred by the statute of limitations, plaintiff, Irene Knox, is nevertheless entitled to maintain her action for loss of consortium. At the time the cause of action arose, the Illinois limitation period for such actions was five years. (Ill. Rev. Stat. 1977, ch. 83, par. 16.) Since the complaint was filed within this period, they contend that the trial court erred in dismissing count II.

■■ Before Irene Knox may recover for loss of her husband's consortium, she must prove that defendant is liable for her husband's injuries. (*Kolar v. City of Chicago* (1973), 12 Ill. App. 3d 887, 299 N.E.2d 479.) Since we have held, as a matter of law, that defendant cannot be held liable to her husband for breach of an implied warranty, Irene Knox's action for loss of consortium must also fail. Consequently, the trial court properly dismissed count II of the complaint.

For the foregoing reasons, the order of the circuit court of Cook County dismissing plaintiffs' complaint is affirmed.

Order affirmed.

Mr. JUSTICE SIMON, specially concurring:

I agree with Judge McNamara's conclusion that the plaintiffs' cause of action was properly dismissed. To explain the result I reach, however,

it is necessary to emphasize a point which my fellow justices have not discussed.

The plaintiffs' theory of the case is that the defendant breached an implied warranty of fitness for a particular purpose. The complaint alleges that Hershey was relying on defendant's skill and judgment to furnish boxcars suitable for the loading, transportation and handling of Hershey's commodities. Plaintiffs' theory is that the defendant breached its implied warranty by delivering to Hershey a boxcar which was constructed in such a way that a hole appeared in the boxcar floor and that such a boxcar was not fit for Hershey's purpose. Although plaintiffs refer in their complaint to a covenant to repair, their suit is not based upon a breach of that covenant.

I do not believe it is necessary to reach the question of whether the warranty of fitness runs in favor of Johnny Knox. Even if it does, his action, in my opinion, is barred by the 4-year limitations provision of the U.C.C. (Ill. Rev. Stat. 1977, ch. 26, par. 2—725):

> "(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

Defendant leased the boxcar on March 1, 1966, and tendered delivery to Hershey a short time later. The cause of action thus accrued in 1966. The fact that the boxcar circulated on various railroad lines and was rerouted for use by other shippers from time to time before it was returned to Hershey does not mean that Hershey received tender of delivery within the meaning of section 2—725 each time it regained use of the boxcar. Nor does the fact that defendant may have had, even for purposes of repair, possession of the boxcar after it was first delivered to Hershey but before the redelivery to Hershey preceding Knox's injury mean that the redelivery constituted a new tender of delivery under section 2—725. The crux of the plaintiffs' claim is that the boxcar was unfit upon initial delivery in 1966. The breach occurred then. The warranty was not renewed each time the boxcar was rerouted to Hershey. Nor was it renewed by the covenant to repair or by any repairs that were made or needed.

The covenant to repair was not an explicit guarantee of future performance. (*Wilson v. Massey-Ferguson, Inc.* (1974), 21 Ill. App. 3d 867, 870, 315 N.E.2d 580, 584; see *Binkley Co. v. Teledyne Mid-America Corp.* (E.D. Mo. 1971), 333 F. Supp. 1183; *Tomes v. Chrysler Corp.* (1978), 60 Ill. App. 3d 707, 709, 377 N.E.2d 224, 227.) Because the complaint fails to allege any explicit guarantee of future performance, the limited discovery exception provided for by section 2—725(2) does not apply here. (*Beckmire v. Ristokrat Clay Products Co.* (1976), 36 Ill. App. 3d 411, 413, 343 N.E.2d 530, 532.) I find no justification for adding still another discovery exemption not even mentioned in the statute. By explicitly stating that a cause of action accrues when the breach occurs, "regardless of the aggrieved party's lack of knowledge of the breach," the legislature chose not to apply a discovery doctrine to actions based upon the commercial code except as explicitly set forth in section 2—725(2). *Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550, did not extend the discovery rule to implied warranty of fitness actions, for in that case the action was filed within the 4 years from the delivery of the pills that caused the injury.

The dissenting opinion argues that despite the express words of section 2—725 to the contrary the statute of limitations does not begin to run until the injured party discovers the breach and is able to bring suit. The case the dissent relies on to support this proposition conflicts with Illinois law. In *Morton v. Texas Welding & Manufacturing Co.* (S.D. Tex. 1976), 408 F. Supp. 7, the court judicially grafted a discovery rule onto the U.C.C.'s absolute 4-year bar as enacted in Texas. The court felt that the Texas legislature had enacted section 2—725 long after the Texas courts had generally adopted the discovery rule, and that therefore the legislative intention had been to include a general discovery rule in the Texas Commercial Code. In Illinois, however, the legal evolution was the opposite. The U.C.C. was adopted in Illinois long before the courts first adopted the equitable discovery rule. (See *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656; *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450.) Thus, it is not correct to assume, simply from the existence of a discovery rule which has been applied to some of the Illinois limitations statutes, that the legislature intended a broad discovery rule to apply in cases arising from breaches of implied warranties where there were no explicit guarantees of future performance.

Even if the plain wording of section 2—725 did not preclude the application of the discovery rule to this case, the interests of equity do not favor the application of the discovery rule to breaches of implied warranties. In determining whether to apply the discovery doctrine to a statute of limitation, competing interests must be balanced: the increased

difficulties of proof which accompany the passage of time against the hardship to the injured plaintiff who neither knows nor should have known of the right to sue. (*Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656.) Because we are dealing with the Uniform Commercial Code, we should also consider the important interests of uniformity of result and commercial certainty. Ill. Ann. Stat., ch. 26, par. 2—725, Uniform Commercial Code Comment, at 614 (Smith-Hurd 1963).

I note first that the interests of uniformity and certainty themselves outweigh the concern for the increased difficulties of proof. (Ill. Ann. Stat., ch. 26, par. 2—725, Illinois Code Comment, at 613 (Smith-Hurd 1963).) Thus, even where there is no hardship to the defendant because all the facts necessary to prove its case are in its hands, as is typically the case in a suit such as this, there is no discovery rule. (*Gates Rubber Co. v. USM Corp.* (7th Cir. 1975), 508 F.2d 603, 613.) In addition, the hardships to the plaintiffs in a section 2—315 suit caused by an absolute 4-year statute of limitations are minimal. Since the heart of the cause of action is a defect in the product which makes it unreasonably dangerous, many section 2—315 plaintiffs would have at least a strict liability and perhaps a negligence suit as well. A suit brought under these overlapping legal theories would have the benefit of a discovery rule. (See, *e.g., Chicago & Southern Airlines, Inc.* (1977), 54 Ill. App. 3d 609, 370 N.E.2d 54.) A plaintiff like Knox might be barred by an absolute 4-year statute of limitations under section 2—725, but he would still be able to obtain relief by instituting a tort suit in Illinois within 2 years of the date of reasonable discovery. The absolute bar in the commercial code works little hardship to an injured plaintiff, and for that reason it is unnecessary to apply a discovery rule to suits brought under section 2—315. Accord, *Tomes v. Chrysler Corp.* (1978), 60 Ill. App. 3d 707, 377 N.E.2d 224.

Uniformity and commercial certainty require that the 4-year absolute bar of section 2—725 remain as written, with no softening effect of a judicially applied discovery doctrine. The results of the bar are not absurd. True, a suit by Knox relying on the U.C.C. was barred even before the injury occurred. But Knox is here trying to distort his personal injury so as to fit it into a breach of warranty theory only because he slept on his rights by not bringing his suit within 2 years after the date of reasonable discovery as provided by the Illinois statute applicable to recovery for personal injuries. Action within that period would have made this suit, with its difficult questions under the commercial code, unnecessary. We should not bend the clear statement of the law to fit this plaintiff under its protection.

I agree with Judge McNamara that Irene Knox cannot recover for loss of her husband's consortium if her husband cannot himself recover

for his injuries, whether because the warranty does not extend to him or because his suit is timebarred *(Kolar v. City of Chicago* (1973), 12 Ill. App. 3d 887, 299 N.E.2d 479).

Mr. JUSTICE RIZZI, dissenting:

I believe the defendant's motion to strike and dismiss should be denied. I would reverse the dismissal order and remand the case to the trial court.

## I
### The Law of Illinois Controls this Case

The first and second opinions do not discuss whether the law of Illinois or Louisiana governs this case.[1] I am compelled to decide this issue. If the law of Louisiana controls, the case cannot be maintained because, at the time of the occurrence, it had a one-year limitation period for personal injury actions and had not adopted the Uniform Commercial Code. If the law of Illinois controls, the case may be maintained, provided the complaint sufficiently states a claim for breach of implied warranty, because Illinois has adopted the Code, which has a four-year limitation period for breach of implied warranty actions. This suit was filed within the four-year period.

Since I believe the Code is applicable in this case, I reach the conclusion that Illinois law governs the case because of section 1—105(1) of the Code. This section provides:

"Except as provided hereafter in this Section *when a transaction bears a reasonable relation to this State and also to another state* or nation the parties may agree that the law either of this State or of such other state or nation shall govern their rights and duties. Failing such agreement *this Act applies to transactions bearing an appropriate relation to this State.*" (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 26, par. 1—105(1).)

Uniform Commercial Code Comment 3 to section 1—105 states:

"*Where a transaction has significant contacts with a state which has enacted the Act and also with other jurisdictions, the question what relation is 'appropriate' is left to judicial decision. In deciding that question, the court is not strictly bound by precedents established in other contexts.* Thus a conflict-of-laws decision refusing to apply a purely local statute or rule of law to a particular multi-state transaction may not be valid precedent for refusal to

---

[1] For convenience, the opinion designated as the "opinion of the court" shall be referred to herein as the first opinion. The opinion designated as the "specially concurring" opinion shall be referred to herein as the second opinion.

apply the Code in an analogous situation. *Application of the Code in such circumstances may be justified by its comprehensiveness, by the policy of uniformity,* and by the fact that it is in large part a reformulation and restatement of the law merchant and of the understanding of a business community which transcends state and even national boundaries." (Emphasis added.) Ill. Ann. Stat., ch. 26, par. 1—105, Uniform Commercial Code Comment, at 27 (Smith-Hurd 1963).

In the present case, defendant is an Illinois corporation, subject to the jurisdiction, benefits, and laws of Illinois. It must comply with the laws of Illinois in the conduct of its business. Its home office and nerve center of operations are in Illinois. Its business of leasing railroad boxcars to various shippers and industries extends throughout the United States, but it is all controlled through its home office in Illinois.

In the regular course of its business in Illinois, defendant entered into a lease with Hershey Chocolate for the boxcar in question. The lease was executed in Illinois and was in effect at the time of the occurrence. Under the terms of the lease, Hershey was required to inform defendant promptly of the movements of the boxcar, dates it was loaded, nature of the commodities shipped, and its destination and routes. Hershey was also required to provide defendant with all other information involving the boxcar. Further, defendant was entitled to a mileage charge from the railroad companies using the boxcar. In addition, the lease provided that defendant was responsible for the maintenance and relevant repairs of the boxcar. On May 30, 1973, defendant was notified that the floor of the boxcar was in disrepair.

Hershey's principal place of business is in Pennsylvania. The boxcar was loaded by Hershey and shipped via rail to purchasers of Hershey's chocolate throughout the United States. The accident allegedly occurred as a result of defendant's failure to repair the floor of the boxcar after having actual notice that it was in disrepair. The boxcar was in Louisiana at that time for the sole purpose of delivering a carload of Hershey chocolates to an A & P warehouse in New Orleans, Louisiana.

These facts demonstrate that all pertinent provisions of the lease, under which the implied warranty arises, were effectively controlled in Illinois by defendant. At the time of the occurrence and relevant times leading up to the occurrence, the boxcar, including its maintenance, repairs, and operational movements, was effectively regulated in Illinois by defendant. Moreover, defendant's duty to repair the boxcar is inseparably intertwined with defendant's conduct in Illinois. Defendant had actual notice that the floor of the boxcar was in disrepair. If the duty to repair the boxcar was breached, the breach occurred in Illinois. In light

of these circumstances and the considerations stated in Code Comment 3, the transaction clearly bears an appropriate relationship to Illinois under section 1—105(1) of the Code and Illinois law governs this case.

## II
### Section 2—315 of the Code is Applicable in this Case

I agree with the conclusion in the first opinion that there is an implied warranty of fitness under section 2—315 of the Code.[2] But I disagree with the rationale of the opinion in attempting to distinguish this lease transaction from other lease transactions insofar as a breach of warranty is concerned. In my judgment, any transaction in goods[3] meeting the requirements of section 2—315 should carry with it an implied warranty of fitness regardless of whether the transaction is a sale or lease. (See *Owens v. Patent Scaffolding Co.* (1974), 77 Misc. 2d 992, 354 N.Y.S.2d 778; *In re Vaillancourt* (D. Me. 1970), 7 U.C.C. Rep. Serv. 748 (D. Me. 1970).) I feel that any distinction on this point is artificial.

A modern judicial interpretation of the statute dictates that transactions in goods involving sales and leases should be treated alike. In view of the multitude of transactions in goods involving leases, and the like number involving sales, it would be an anomaly to subject these types of commercial transactions to different rules of law regarding warranties when the relevant effect of each is identical. In both transactions, one party seeks to acquire the right to use a product and the other seeks to transfer the right to use the product. (See *Walter E. Heller & Co. v. Convalescent Home* (1977), 49 Ill. App. 3d 213, 218, 219, 365 N.E.2d 1285, 1289; *cf. Crowe v. Public Building Com.* (1978), 74 Ill. 2d 10, 383 N.E.2d 80 (court equated lessor to a seller in a strict liability action).) With respect to implied warranties, it should make no difference whether the transfer is made by title or lease. For these reasons, I believe section 2—315 applies in this case.

## III
### Plaintiff is a Third Party Beneficiary
### Under Section 2—318 of the Code

I disagree with the conclusion in the first opinion that plaintiff is not a third-party beneficiary under section 2—318 of the Code in this implied warranty action. Specifically, I cannot accept the determination that *Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550, is not applicable. Nor can I agree that this case should be decided on the basis of a lack of privity.

*Berry* involved an implied warranty action under section 2—315 and 2—318 of the Code. The court held that lack of privity between a

---

[2] Section 2—315 of the Code is reproduced in the first opinion.

[3] Section 2—102 provides, in relevant part, "[T]his Article applies to transactions in goods ° ° °." Ill. Rev. Stat. 1973, ch. 26, par. 2—102.

purchaser and a remote manufacturer is of no consequence in a breach of implied warranty action under the Code. In reaching its conclusion, the court stated (56 Ill. 2d 548, 553, 309 N.E.2d 550, 553):

"The aforementioned Code provisions clearly demonstrate the legislative intent to create a statutory cause of action for breach of implied warranty *to afford consumer protection to those who sustain personal injuries resulting from product deficiencies.*" (Emphasis added.)

In order to give full effect to this intention and, at the same time, take into account the developing case law concerning liability for defective products (see *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182; *Dunham v. Vaughan & Bushnell Mfg. Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401; *Berry; Winnett v. Winnett* (1974), 57 Ill. 2d 7, 310 N.E.2d 1; *Court v. Grzelinski* (1978), 72 Ill. 2d 141, 379 N.E.2d 281; see also Restatement (Second) of Torts §402A (1965)), the implied warranty should apply to users and all persons who may reasonably be expected to be affected by a breach of the implied warranty regardless of privity.

The first opinion emphasizes that by "electing to enact what was then Alternative A for section 2—318 in Illinois, we believe the legislature. consciously chose *to limit* a seller's liability for breach of warranty *to the specific classes enumerated therein.*" (Emphasis added.) Yet in the very next paragraph of the opinion, the court accepts that *an employee* of the last purchaser may qualify as a beneficiary under section 2—318. If the conclusion of the court that "the legislature consciously chose to limit a seller's warranty to the specific classes enumerated therein" is correct, then I do not believe the court can logically accept an employee of the last purchaser as a beneficiary under section 2—318. Certainly, *an employee* is not one of the "specific classes enumerated therein."

Contrary to the conclusion in the first opinion regarding the intention of the legislature, section 2—318 suggests that the legislature intended that "the section is neutral" as to whether it includes classes beyond those expressly enumerated. Specifically, Uniform Commercial Code Comment 3 to section 2—318, as it existed at the time the Code was adopted in 1961, reads:

"This section expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. *Beyond this, the section is neutral* * * *.*" (Emphasis added.) Ill. Ann. Stat., ch. 26, par. 2—318, Uniform Commercial Code Comment, at 265, (Smith-Hurd 1963).

Clearly, one would interpret this to mean that when the Code was adopted, the legislature intended to look to the judiciary to determine whether the classes of beneficiaries should be enlarged. Thus, by electing to adopt Alternative A, the legislature did not consciously choose to limit a seller's liability for breach of warranty to the specific classes enumerated

in the section. Rather, it merely intended to have the section remain neutral on this question and to let the judiciary decide whether to enlarge the classes of beneficiaries on a case-by-case basis. In 1 Anderson, Uniform Commercial Code §2—318:2 (1970 & Supp. 1978), the author states:

"The form shown as Alternative A was substituted in 1951, limiting beneficiaries to the family, household and guests of the buyer. *Beyond this*, according to Comment 3, *the section was neutral and was not intended to enlarge or restrict* 'the developing case law.' * * * Alternative B is therefore promulgated in substantially the 1950 form, and Alternative C is drawn to reflect the trend of more recent decisions as indicated by Restatement of Torts 2d §402A * * *."[4] (Emphasis added.)

Significantly, by developing case law, Illinois has adopted Restatement (Second) of Torts, section 402A. (*Suvada*, 32 Ill. 2d 612, 621-22, 210 N.E.2d 182, 187; accord, *Duham*, 42 Ill. 2d 339, 343-44, 247 N.E.2d 401, 403-04.) This suggests to me that, by developing case law in Illinois, those persons included in Restatement (Second) of Torts, section 402A, should qualify as beneficiaries under section 2—318 of the Code. Section 402A of the Restatement expressly covers any user of the product even though he "has not brought the product from or entered into any contractual relation with the seller." By case law, the principles of section 402A have been extended to include all persons who may reasonably be expected to be affected by the defective product. (*E.g., Winnett*, 57 Ill. 2d 7, 11, 310 N.E.2d 1, 4; *Court*, 72 Ill. 2d 141, 146, 151, 379 N.E.2d 281, 283, 285.) In summary, in order to give full effect to the legislative intent of sections 2—315 and 2—318 of the Code and, at the same time, take into account the developing case law concerning liability for defective products, an implied warranty should apply to users and all persons who may reasonably be expected to be affected by the breach of implied warranty regardless of privity.

The decision in the first opinion is based upon lack of privity, distinguishing between horizontal and vertical privity. I disagree with the position taken in the first opinion.

I think it is a mistake to decide this case or any other personal injury case by exhuming concepts of privity in Illinois. In actions when the plaintiff is seeking to recover damages for personal injuries, Illinois courts have taken the position that liability or nonliability should not be decided on the basis of privity. In *Tiffin v. Great Atlantic & Pacific Tea Co.* (1959), 18 Ill. 2d 48, 162 N.E.2d 406, the court recognized that a breach of implied warranty action may be maintained against a seller of food even though there was no privity between the parties. In *Suvada*, the court abolished the doctrine of privity in product liability cases. In *Rozny v.*

---

[4] Alternatives B and C are reproduced in the first opinion.

*Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656, the court abolished the requirement of privity in all tort cases. In *Berry*, the court held that lack of privity is of no consequence in a breach of implied warranty action between a purchaser of the product and a remote manufacturer. In eschewing privity, the *Berry* court recognized that tort liability and implied warranty liability are similar. 56 Ill. 2d 548, 554, 309 N.E.2d 550, 554.

Plainly, in Illinois the process of adhering to or distinguishing the privity requirement has proved to be an unsatisfactory method of determining liability to persons who suffer personal injuries. Because of the difficulties in applying the doctrine, courts created artificial exceptions deemed necessary to achieve desirable results which were not always completely reconcilable. (*Rozny*, 43 Ill. 2d 54, 62, 250 N.E.2d 656, 660.) I do not believe this court should be treading this same beaten path. In my opinion, it does not make any sense to deny recovery to the plaintiff merely because he is an employee of A & P, and yet, in another case, allow recovery to a Hershey employee injured in the same accident, in a like manner, and as a result of the same defect in the product. The *Rozny* court's statement relating to privity is apt here (43 Ill. 2d 54, 62, 250 N.E.2d 656, 660):

> "To eliminate any uncertainty still remaining after *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 617, we emphasize that lack of direct contractual relationship between the parties is not a defense in a tort action in this jurisdiction. Thus, tort liability will henceforth be measured by the scope of the duty owed rather than the artificial concepts of privity.
>
> Having discarded any remnants of the privity concept, we now concern ourselves with the scope of defendant's liability using traditional tortious misrepresentation standards."

I feel this court should not pick up the discarded remnants of privity in personal injury actions and mold them back into our law, where they are destined for eradication again.

## IV

### The Four-Year Limitation Period in Section 2—725
#### of the Code Applies in this Case

Defendant contends that section 2—725(1) is not applicable to this case.[5] Defendant argues that a breach of implied warranty suit to recover for personal injuries, brought by a third-party beneficiary, must be filed within the two-year limitation in section 14 of the Limitations Act (Ill. Rev. Stat. 1973, ch. 83, par. 15), rather than the four-year limitation under the Code. Defendant also cites section 2—725(2) of the Code and argues

---

[5] Section 2—725(1) reads: "An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued." Ill. Rev. Stat. 1973, ch. 26, par. 2—725(1).

that the period of limitation for breach of warranty should begin to run from the date of delivery of the boxcar to Hershey. Section 2—725(2) states that a "breach of warranty occurs when tender of delivery is made * * *." (Ill. Rev. Stat. 1973, ch. 26, par. 2—725(2).) Defendant's arguments are without merit.

Section 2—725 was discussed by the court in *Berry*. In construing the statute, the court gave effect to the legislative intent and plain meaning of this section. In this regard, the court stated (56 Ill. 2d 548, 551-54, 309 N.E.2d 550, 552):

> "The primary issue presented for review is whether the four-year statute of limitations established by section 2—725(1) of the Code's sales article governs an action brought for personal injury allegedly arising from a breach of implied warranty.
>
> * * *
>
> We therefore hold that section 2—725(1) sets forth the appropriate limitation period for personal injury actions predicated upon a breach-of-implied-warranty theory under the Code."

It is, therefore, inarguable that section 2—725(1) sets forth the appropriate limitation period for all personal injury actions based upon a breach of implied warranty theory under the Code. Accord, *Morton v. Texas Welding & Mfg. Co.* (S.D. Tex. 1976), 408 F. Supp. 7, 10-11.

The limitation period under section 2—725(1) is "within 4 years after the cause of action has accrued." (Ill. Rev. Stat. 1973, ch. 26, par. 2—725(1).) The running of a statute of limitations assumes that during that period an injured party could have brought suit. Therefore, the period begins to run from the date of injury when the claim is for damages resulting from personal injury. (*Morton*, 408 F. Supp. 7, 11.) Plainly, the cause of action accrued on November 3, 1973, the date plaintiff, Johnnie Knox, Jr., was injured. Defendant's theory that the four-year limitation period began to run from the time of delivery of the boxcar to Hershey would produce absurd results. For instance, if the four-year limitation period begins to run from the date of delivery of the product in a breach of warranty action to recover for personal injury, the period of limitation would expire in many cases before the injury occurs. When the entire statute is examined in light of the intention of the legislature (see *Berry*, 56 Ill. 2d 548, 553, 309 N.E.2d 550, 553), it is clear that the four-year limitation period provided in section 2—725(1) applies to this case and the period began to run from the date Johnnie Knox, Jr., was injured. Since the suit was filed within this four-year period, defendant's motion to strike and dismiss count I of the complaint should be denied.

## V
### Count II of the Complaint should not be Dismissed

In the first and second opinions, my colleagues affirm the dismissal of

count II of the complaint, which is a claim for loss of consortium brought by the wife of plaintiff, Johnnie Knox, Jr. Count II contains essentially the same relevant allegations as count I. I believe defendant's motion to strike and dismiss count II should be denied for the same reasons that it should be denied as to count I. See *Mitchell v. White Motor Co.* (1974), 58 Ill. 2d 159, 317 N.E.2d 505; Ill. Rev. Stat. 1977, ch. 83, par. 15.1.

CONCLUSION

Accordingly, I believe defendant's motion to strike and dismiss the complaint should be denied. I would reverse the dismissal order and remand the case to the trial court.