Elizabeth A. JARVIS, etc., Plaintiff,

v.

Ira STONE, et al., Defendants.

No. 80 C 4049.

United States District Court,
N. D. Illinois, E. D.

July 9, 1981.

Mark R. Ordower, Chicago, Ill., for plaintiff.

Gottlieb & Schwartz, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Plaintiff Elizabeth Jarvis filed this diversity action on her own behalf and as Administrator of the Estate of her late husband Willard Jarvis ("Jarvis") against Ira Stone, Richard Brams ("Brams"), Norman Stone and Graphic Center, Inc. ("Graphic"), alleging that defendants caused Jarvis to commit suicide. Plaintiff's original complaint as amended (the "Complaint") comprises three counts, seeking relief under theories of wrongful death, intentional infliction of emotional damage and loss of consortium. Defendants have moved to dismiss the Complaint or alternatively to dismiss the prayers for punitive damages in Counts II and III.[1] For the reasons stated in this memorandum opinion and order defendants' motion to dismiss the Complaint is granted, and this action is dismissed as well.

### Facts[2]

This Court's February 11, 1981 Memorandum Opinion and Order describes the allegations in the Complaint, which thus need not be recounted in any detail here. Briefly, plaintiff claims that after Jarvis' resignation from employment with Graphic and acceptance of a position with a competing firm, Art Works, Inc. ("Art Works"), defendants allegedly "conspired to injure Jarvis' physical and emotional health by destroying his business, his reputation, and the Art Works business." According to the Complaint those actions "affected Jarvis' health and emotional stability adversely" so that on May 10 or 11, 1979 Jarvis committed suicide.

---

1. Defendants have also moved alternatively to limit the scope of relief in Count III to the period that Jarvis was alive. In its memorandum in opposition to defendants' motion, plaintiff acknowledged that such a limitation is proper.

2. For purposes of this opinion the "facts" are those pleaded in the Complaint. Thus the statements in the text imply no factual findings by the Court.

*Plaintiff's Theories of Liability*

*Count I: Wrongful Death*

Complaint Count I seeks compensatory damages[3] under the theory that defendants wrongfully caused Jarvis' death. Defendants assert that Count I must be dismissed because, as a matter of law, suicide is "an intervening and independent cause of death which ... breaks the chain of causation, precluding [defendants'] liability." *Stasiof v. Chicago Hoist & Body Co., Inc.*, 50 Ill. App.2d 115, 122, 200 N.E.2d 88, 92 (1st Dist. 1964), *aff'd sub nom. Little v. Chicago Hoist & Body Co.*, 32 Ill.2d 156, 203 N.E.2d 902 (1965); *Brown v. American Steel & Wire Co.*, 43 Ind.App. 560, 88 N.E. 80 (1909).

In a diversity action all substantive questions must be decided in accordance with applicable state law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Plaintiff and defendants have expressed differing views as to the law of which state applies here: Illinois or Indiana. This Court need not make such a choice of law determination unless there is a conflict of laws on the relevant issue. *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d 594, 605 n.2 (7th Cir. 1981). Because the asserted defense is meritorious under the law of both Illinois and Indiana, no choice of law determination is required.

*Stasiof* and *Brown* both hold squarely that "there is no recovery for a suicide or attempted suicide following a tortious act." 50 Ill.App.2d at 122, 200 N.E.2d at 92; 88 N.E. at 84. That principle (the "suicide rule") is based on the rationale that "the act of suicide is an independent intervening act which the original tortfeasor could not have reasonably [been] expected to foresee." 50 Ill.App.2d at 122, 200 N.E.2d at 92.

Each state's decision recognized an exception to the suicide rule. In *Stasiof* the Court stated (*id.*):

There is an apparent exception to the rule where, as the proximate result of an injury upon his head caused by the negligence of another, the person becomes insane and bereft of reason, and while in this condition and as a result thereof he takes his own life. His act in that case is not a voluntary one, and therefore does not break the causal connection between the suicide and the act which caused the injury.

In *Brown* the Indiana court articulated a broader, though still limited, exception to the rule. It stated that for the exception to apply (88 N.E. at 85):

the evidence must be such as to warrant the jury in finding that the decedent in taking his life acted "without volition, under an uncontrollable impulse, or that he did not understand the physical nature of his act."

*Stasiof* and *Brown* are the controlling precedents in the two states.[4] Under either decision Jarvis' death is plainly not actionable. That Jarvis committed suicide is of course admitted in the Complaint. And the circumstances leading to his suicide, on plaintiff's own allegations, do not come within either state's exception to the suicide rule.

■ Complaint Paragraph 17 states that the "actions of Defendants ... affected Jarvis' health and emotional stability...." Paragraph 18 alleges, "Defendants took these actions intentionally, maliciously and with an utter disregard for Jarvis' life." Neither of those allegations nor anything else in the Complaint suggests (indeed plaintiff does not argue in her memorandum) that Jarvis was "insane and bereft of reason" or "under an uncontrollable impulse" in taking his own life. Hence plain-

---

3. On January 19, 1981 this Court granted defendants' motion to strike plaintiff's prayer for punitive damages from Count I.

4. Neither the Indiana nor the Illinois Supreme Court has addressed the issue presented here, although in affirming *Stasiof* the Illinois Supreme Court (in the course of considering an evidentiary question on appeal) indirectly endorsed the lower court's determination on the substantive legal question. 32 Ill.2d at 158–59, 203 N.E.2d at 903–04. No Indiana or Illinois appellate decisions are contrary to *Stasiof* or *Brown*. *See generally* 1A Moore's Federal Practice ¶ 0.307 (1981).

tiff's claim is not encompassed by either exception to the suicide rule, and Count I must be dismissed.[5]

*Count II: Intentional Infliction of Emotional Damage*

Defendants next urge that a cause of action for intentional infliction of emotional damage (or distress) does not "survive" a decedent's death under either Illinois or Indiana law. If so Count II of the Complaint must also be dismissed.

■■■ As to Indiana law, the appropriate inquiry is not whether such a cause of action could "survive" Jarvis' death, but rather whether it was maintainable in the first instance. As stated in *Kaletha v. Bortz Elevator Co., Inc.*, 383 N.E.2d 1071, 1074 (Ind.App.1978):

> Indiana does not recognize as an independent tort the infliction of mental anguish unaccompanied by contemporaneous physical injury or the breach of some other duty. . . .

■ Plaintiff's Complaint alleges no tort independent of intentional infliction of emotional damage upon which the latter claim, under the Indiana rule, might properly be maintained. Count II would therefore have to be dismissed under Indiana law.

■ Illinois law leads to the same result for somewhat different reasons. Illinois *does* recognize the tort of intentional infliction of emotional damage, independent of a related actionable claim. *See, e. g., Public Finance Corp. v. Davis*, 66 Ill.2d 85, 4 Ill. Dec. 652, 360 N.E.2d 765 (1976). But controlling interpretations of the Illinois Survival Act (the "Act"), Ill.Rev.Stat. ch. 110½, § 27–6 (1976), compel the conclusion that an "emotional damage" claim does not survive a decedent's death.

■ That Act states:

In addition to the actions which survive by the common law, the following also survive: . . . actions to recover damages for an injury to the person (except slander and libel) . . . .

From the language of the Act alone it might be argued that the "emotional damage" tort survives as an action for "injury to the person."[6] Neither party has brought to the Court's attention, nor has the Court discovered in its own research, any cases specifically deciding that question. However the Illinois courts have consistently held that "the words 'damages for injury to the person' clearly and unequivocally mean damages of a physical character." *Mattyasovszky v. West Town Bus Co.*, 21 Ill.App.3d 46, 54, 313 N.E.2d 496, 502 (2d Dist. 1974), *aff'd*, 61 Ill.2d 31, 330 N.E.2d 509 (1975). Actions to redress a variety of injuries of a non-physical nature, impacting a personal (as opposed to property) interest, have uniformly been held not to survive under the Act. *See, e. g., Maritote v. Desilu Productions, Inc.*, 230 F.Supp. 721 (N.D.Ill.1964), *aff'd*, 345 F.2d 418 (7th Cir. 1965) (right to privacy); *Kent v. Muscarello*, 9 Ill.App.3d 738, 293 N.E.2d 6 (2d Dist. 1973) (malicious prosecution); *Pinkerton v. Gilbert*, 22 Ill. App. 568 (1st Dist. 1887) (false imprisonment).

■ Those cases are indistinguishable in principle from plaintiff's claim. Count II alleges a personal injury tort wholly non-physical in nature. Illinois courts have expressly held in a variety of factual contexts that non-physical personal torts do not survive under the Act. Nothing in those decisions or in plaintiffs' memorandum suggests the inapplicability of the same doctrine here.

Indiana and Illinois thus travel different paths to arrive at the same destination. Count II must also be dismissed.

---

**5.** Plaintiff seeks to rely entirely on *Tate v. Canonica*, 180 Cal.App.2d 898, 5 Cal.Rptr. 28 (1st Dist. 1960). As a California court's decision applying California law, *Tate* is totally non-persuasive in this diversity action.

**6.** Such an action plainly does not survive under the "common law" preserved by the Act. At

common law actions that survived were those in which a property interest was involved. Actions based on an alleged violation of the decedent's personal rights abated. *See, e. g., McGill v. Lazzaro*, 62 Ill.App.3d 151, 19 Ill.Dec. 501, 379 N.E.2d 16 (1st Dist. 1978).

*Count III: Loss of Consortium*

■ Under both Illinois and Indiana law the spouse of a wrongfully injured person may bring an action for loss of consortium on his or her own behalf. Such claims however are purely derivative in nature. They first require that the defendants be ·liable for the injuries to the person whose spouse brings the action. *Knox v. North American Car Corp.*, 80 Ill.App.3d 683, 35 Ill.Dec. 827, 399 N.E.2d 1355 (1st Dist. 1980); *Arthur v. Arthur*, 156 Ind.App. 405, 406, 296 N.E.2d 912, 913 (3d Dist. 1973). Defendants argue that if Counts I and II of the Complaint are dismissed (as they now have been) and plaintiff therefore cannot obtain any relief as Administrator, Count III must be dismissed as well because of its derivative character.

■ Defendants fail to recognize the complexity of the issue raised by Count III. They assume that because any cause of action Jarvis might have had has expired, no claim exists from which Count III can "derive." But it must be remembered that consortium claims are derivative in the sense that they must derive from the claim of the injured spouse (in this case Jarvis) in the first instance. It is at least arguable that if the injured spouse once had a viable primary claim, its expiration (or non-survival) does not *necessarily* extinguish the non-injured spouse's derivative claim for loss of consortium.

Given that possibility, the Court must review the choice of law considerations that did not have to be dealt with earlier. There are four possible alternatives, three of which require little discussion:[7]

(1) Illinois law could apply to both the consortium and emotional damage claims. *Knox v. North American Car Corp.* teaches that the consortium claim could not survive.

In *Knox* the Court held that a consortium claim could not "derive" from a primary claim that had been extinguished by the statute of limitations. In this case Illinois law would hold the primary claim—intentional infliction of emotional damage—extinguished by Jarvis' death. Thus *Knox* is directly on point and confirms that defendants' characterization of the derivative nature of consortium, rather than the alternative theory, accurately reflects Illinois law.

(2) Illinois law could apply to the consortium claim, while Indiana law governed the emotional damage claim. Because Indiana law does not recognize the tort of intentional infliction of emotional damage, there would be no primary claim from which the consortium claim could derive under that alternative.

(3) Indiana law could apply to both the consortium and emotional damage claims. Under that possibility the reasoning just outlined would apply with equal force to defeat the consortium claim.

However the fourth possible choice of law situation (Indiana law controlling the consortium claim and Illinois law controlling the emotional damage claim[8]) is problematic. If Indiana consortium law embodies the alternative theory of derivation, Elizabeth Jarvis' own claim (stemming as it would from an extinguished emotional distress claim that Illinois law had once considered viable) would survive (at least for purposes of a motion to dismiss).

No Indiana case is directly in point. *Arthur v. Arthur* is the "closest" precedent. There the Indiana Court of Appeals stated (296 N.E.2d at 913, citations omitted):

> The law in Indiana is clear that a wife is entitled to recover for loss of consortium against a wrongdoer who has injured her husband. However, a cause of action for

---

7. For this analysis we need look only at a Jarvis claim for intentional infliction of emotional harm as the source for Elizabeth Jarvis' derivative consortium claim. By definition a wrongful death claim could not serve the same function because it never belonged to Jarvis himself.

8. This would seem to be the most plausible choice of law alternative. Defendants' alleged wrongful actions against Jarvis and the resulting injury to him apparently occurred in Illinois. On the other hand Elizabeth Jarvis, an Indiana resident, presumably suffered her own injury (loss of consortium) in the state of her residence.

loss of consortium derives its viability from the validity of the claim of the injured spouse against the wrongdoer. Where, for example, the claim of the injured spouse against the alleged tortfeasor has been abrogated by statute, the right of the other spouse to recover for loss of consortium cannot exist. Thus the critical issue in the instant case is whether ... [the injured spouse] has a valid. cause of action against ... [the tortfeasor].

*Arthur* and the cases it cites all held that where the injured spouse recovered under the Indiana Workmen's Compensation Act, which contains an exclusive remedy provision, recovery for loss of consortium would not be permitted. That is not of course the specific situation presented in this case. However the *principle* underlying *Arthur*, the principle that represents Indiana law, may be stated in broader terms: If public policy (in *Arthur*, public policy as manifested by the Workmen's Compensation Act) bars a direct claim by the injured spouse, it would undermine that public policy to permit recovery by the other spouse.

That principle is readily applicable to this case. On the assumption now under consideration, Illinois public policy dictates that the primary claim dies with the injured spouse. Under the *Arthur* principle the derivative claim must be extinguished as well.

Accordingly the Court concludes that under each choice of law possibility this case presents, Count III of the Complaint must be dismissed.

### Conclusion

Defendants' motion is granted. This action is dismissed.