Edward J. NELSON and Grace B. Nelson, Plaintiffs,

v.

Dr. Kanakmal JAIN, Defendant.

No. 80 C 5674.

United States District Court, N. D. Illinois, E. D.

Nov. 24, 1981.

Paul Grauer, Schaumburg, Ill., for plaintiffs.

Edward T. Butt, Jr., Douglas L. Prochnow, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Edward J. Nelson ("Edward") and his wife Grace B. Nelson (collectively "Nelsons") have sued Dr. Kanakmal Jain ("Jain") claiming medical malpractice. Jain has moved (1) for summary judgment and (2) to strike the Complaint and assess costs and attorneys' fees against Nelsons. For the reasons stated in this memorandum opinion and order, Jain's summary judgment motion is granted, but his motion to strike and for attorneys' fees is denied.

### Facts [1]

On October 26, 1977 Edward sustained an injury to his right shoulder while at his place of employment. Between October 27 and December 2, 1977 Edward was treated for his injuries by Jain, who diagnosed the injury as an interior dislocation of the right shoulder. On December 2 Edward saw an orthopedic specialist, Dr. Walch, who diagnosed the injury as a full thickness tear of the right rotator cuff and advised surgery. On December 15 Edward underwent surgery at Alexian Brothers Medical Center for repair of a right rotator cuff tear.

Edward continued to have problems with his right shoulder and on July 11, 1978 filed a workers' compensation application with the Illinois Industrial Commission. Early in 1979 Edward obtained a further evaluation of his condition from the Mayo Clinic. About October 3, 1980 Edward was offered a lump sum of $36,630 in settlement of the workers' compensation claim. On October 9 Edward sought the advice of attorney Paul Grauer ("Grauer") to assist him in determining whether the proposed settlement was fair and reasonable. On October 11 Edward supplied Grauer with copies of the medical records relating to the injury. On the same day Grauer told Edward that in his opinion (1) the proposed workers' compensation settlement was fair and reasonable and (2) a possible malpractice claim existed against Jain (that was the first time anyone had suggested the possibility of such a claim to Edward). Edward immediately authorized Grauer to investigate the possibility of filing a malpractice claim. That investigation resulted in the filing of this action October 23, 1980.

### Count I—Medical Malpractice

■ Complaint ¶ 9 charges a number of failures on Jain's part. Those in turn assertedly caused a delay in Edward's receiving proper treatment, giving rise to Edward's aggravated and continuing injury. Because Jain stopped treating Edward December 2, 1977 that was the last date on which medical malpractice could have occurred—and Complaint ¶ 9 identifies that date for the occurrence of Jain's last wrongful act.

1. All facts stated in this opinion are derived entirely from Edward's affidavit. Accordingly there is by definition no "genuine issue of material fact" for purposes of applying Fed.R. Civ.P. ("Rule") 56.

Illinois' General Assembly has established a two-year limitation period, subject to a statutory discovery rule, for medical malpractice actions (Ill.Rev.Stat. ch. 83, § 22.1):

No action for damages for injury or death against any physician or hospital... shall be brought more than two years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action....

Because this action was filed October 23, 1980, Nelsons must bring themselves within the discovery rule to avoid being barred by limitations. To that end they allege in Complaint ¶ 13:

That the first time plaintiff had reasonable grounds to believe, or learned of any possible negligence or malpractice having taken place as a result of the treatment rendered by the Defendant Doctor as aforesaid was on or about October 11, 1980.

Jain's summary judgment motion asserts there is no evidence to support that allegation, for Edward knew or should have known of any alleged negligence more than two years before this action was filed. Just this year the Illinois Supreme Court announced its definitive standard for applying the discovery rule in medical malpractice actions, *Witherell v. Weimer*, 85 Ill.2d 146, 156, 52 Ill.Dec. 6, 11, 421 N.E.2d 869, 874 (1981):

The statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. At that point the burden is upon the injured person to inquire further as to the existence of a cause of action [citing cases]. In many, if not most, cases the time at which an injured party knows or reasonably should have known both of his injury and that it was wrongfully caused will be a disputed question to be resolved by the finder of fact. (*Lipsey [v. Michael Reese Hospital*, 46 Ill.2d 32, 262 N.E.2d 450 (1970)].) Where it is apparent from

the undisputed facts, however, that only one conclusion can be drawn, the question becomes one for the court. *Berry [v. G. D. Searle & Co.*, 56 Ill.2d 548, 309 N.E.2d 550 (1974)].

Under that standard the facts stated in Edward's own affidavit demonstrate that the statute of limitations ran before Nelsons filed suit.

Edward's Complaint states that as a result of Jain's actions Edward's right arm has become permanently disabled. What that allegation implies (and Complaint ¶ 9 confirms) is that (1) Jain's improper diagnosis delayed the necessary surgery and (2) but for the delay in receiving the appropriate surgery Edward would have recovered full use of his right arm. Thus the injury Edward allegedly suffered was the failure to recover use of his right arm after surgery. As Edward's affidavit states:

(1) "Following the above surgery, I continued to have medical problems with my right shoulder...."

(2) On July 11, 1978 Edward filed a workers' compensation application with the Illinois Industrial Commission based on his shoulder injury.

Edward was therefore clearly aware of his *injury* more than two years before filing this action.

Edward's affidavit also demonstrates conclusively that he knew or reasonably should have known that his injury was wrongfully caused. When Edward switched from Jain to Dr. Walch he was given a radically different diagnosis of his condition. Edward put enough faith in the latter diagnosis to undergo surgery. Shortly after the surgery Edward was aware that (1) he had not fully recovered from the surgery, (2) Jain had improperly diagnosed his condition and (3) the surgery had been delayed because of the improper diagnosis. Given those facts Edward had the burden, in *Witherell* terms, "to inquire further as to the existence of a cause of action."

Edward's Complaint does not allege (nor does his affidavit indicate) the discovery of a single additional *fact* between October 23, 1978 and October 11,

1980 to indicate that "his injury...was wrongfully caused." Only one event occurred during that time: Edward gave his medical records to Grauer, who then advised him that a possible medical malpractice action existed.

But such advice is *not* made the triggering event for application of the discovery rule. If it were, it would place a premium on being an ostrich, on blinding oneself to the obvious inferences from plain facts. Instead *Witherell* focuses only on facts reasonably indicating that the known injury was wrongfully caused, at which point the injured party cannot wait for someone to draw him or her a road map. At that time he or she must investigate whether a *legal* cause of action exists. As the Illinois Supreme Court said in *Nolan v. Johns-Manville Asbestos*, 85 Ill.2d 161, 170, 52 Ill.Dec. 1, 5, 421 N.E.2d 864, 868 (1981) (decided contemporaneously with *Witherell*):

> We wish to emphasize that the rule we announce is not the same as a rule which states that a cause of action accrues when a person knows or should know of both the injury and the defendants' negligent conduct. Not only is such a standard beyond the comprehension of the ordinary lay person to recognize, but it assumes a conclusion which must properly await legal determination.

*United States v. Kubrick*, 444 U.S. 111, 122, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979), cited favorably in *Witherell*, put the matter in a way that might have been written for this case:

> We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment.... The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask. If he does ask and if the defendant has failed to live up to minimum standards of medical proficiency,

the odds are that a competent doctor will so inform the plaintiff.

Edward was in possession of all necessary facts before October 23, 1978. It takes only a reasonable lay person, not a medical or legal expert, to realize that a misdiagnosis can cause injury. When Nelson did not recover full use of his arm after the operation, the known fact that Jain's initial diagnosis had differed from the one upon which Edward submitted himself to surgery was enough to shift the burden to Edward "to inquire further as to the existence of a cause of action." Accordingly Count I of Nelsons' Complaint must be dismissed.

### *Count II—Loss of Consortium*

■ In Complaint Count II Grace Nelson alleges loss of consortium based on the injury to Edward. Can that claim survive where Edward's primary action is time barred?

In *Knox v. North American Car Corp.*, 80 Ill.App.3d 683, 35 Ill.Dec. 827, 833, 399 N.E.2d 1355, 1361 (1st Dist. 1980) the court first decided that an injury claim premised on a breach of warranty theory failed on limitations grounds. It then turned to the related loss of consortium claim, 80 Ill. App.3d at 690, 35 Ill.Dec. at 832, 399 N.E.2d at 1360:

> Plaintiffs finally contend that even if Johnnie Knox's suit for personal injuries is barred by the statute of limitations, plaintiff, Irene Knox, is nevertheless entitled to maintain her action for loss of consortium.
>
> *       *       *       *       *       *
>
> Before Irene Knox may recover for loss of her husband's consortium, she must prove that defendant is liable for her husband's injuries [citing authority]. Since we have held, as a matter of law, that defendant cannot be held liable to her husband for breach of an implied warranty, Irene Knox's action for loss of consortium must also fail.

*Knox*'s holding that loss of consortium claims are totally derivative and dependent on survival of the primary cause of action

controls this case. *See, Jarvis v. Stone*, 517 F.Supp. 1173, 1177 (N.D.Ill.1981).

### *Jain's Motion To Strike*

■ Jain has moved under Rule 11 to strike Nelsons' Complaint and assess costs and attorney's fees. His motion is based on the charge that Nelsons lacked any factual basis for Complaint ¶ 13.

This Court need not enter into the parties' dispute as to Nelsons' response to Jain's Interrogatory 20. One fact is clear: On October 11, 1980 (the date specified in Complaint ¶ 13) Nelsons' attorney told them a malpractice action might be possible. True enough this Court has held that fact *legally* insufficient to salvage Nelsons' claim. But the *factual* basis for the allegation was there if Nelsons had been right on the law—and no party may be mulcted in attorneys' fees just for losing a legal argument asserted colorably and in good faith. Jain's motion to strike and for fees is denied.

### *Conclusion*

There is no genuine issue of material fact, and Jain is entitled to a judgment as a matter of law on Count I. Because Jain has prevailed on Count I, Count II must also be dismissed. Jain's entire motion for summary judgment under Rule 56 is therefore granted. Jain's motion to strike and for attorneys' fees is denied (though Jain is of course entitled to recover statutory costs).