BELVA L. CARROLL *et al.*, Plaintiffs-Appellees, *v.* G. NICHOLAS
GRABAVOY, Defendant-Appellant.

Third District   No. 78-182

Opinion filed October 26, 1979.

Anthony F. Salerno, of Aurora, for appellant.

Rick A. Mason, of Joliet, for appellees.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The plaintiffs, Belva and Henry Carroll, commenced this action by filing a two-count complaint in the circuit court of Will County. Named as defendant was G. Nicholas Grabavoy, a dentist. In count I of their complaint, the Carrolls alleged the breach of an express warranty by the defendant that he would provide Mrs. Carroll with dentures which would be attractive, pleasing, and which would fit well. In count II, the plaintiffs sought damages from the defendant on the ground of breach of an implied warranty of fitness for the purpose for which the dentures had been purchased. The case was tried without a jury and the trial court entered judgment against the defendant in the amount of $775. The court was silent as to which count the judgment referred to, or whether it was rendered on both counts.

On October 29, 1976, plaintiff Belva Carroll and her husband, plaintiff Henry, met with defendant Dr. Grabavoy, a dentist duly authorized to practice dentistry in the State of Illinois, concerning the purchase of a new set of dentures for Mrs. Carroll. At that time, Mrs. Carroll explained that she was dissatisfied with her existing dentures as they were too loose and that she had had some unhappy experiences with her previous dentist. One of several conflicts in testimony exists concerning other statements allegedly made at that initial interview. The plaintiffs testified that the defendant specifically promised and guaranteed to provide Mrs. Carroll with dentures which would be "attractive," "fit well," and which would be "pleasing" to her. They further stated that they would not have entered into an agreement with the defendant if these promises had not been made to them. The defendant testified that he never promised the plaintiffs anything other than that he would do his best and further stated that he attempted to persuade Mrs. Carroll to allow him to adjust her existing dentures. The plaintiffs nonetheless employed Dr. Grabavoy to produce a new set of dentures.

Defendant Grabavoy then began the process of producing the new dentures. Pursuant to the custom and practice of the profession he prepared a set of wax dentures, which Mrs. Carroll tried on during her appointment of December 6, 1976. A conflict of testimony exists regarding the interaction which occurred at that time. Mrs. Carroll testified that the wax dentures were unsatisfactory but that the defendant told her not to worry as the actual dentures would be satisfactory. The defendant testified that he explained to Mrs. Carroll the importance of making sure she was pleased with the dentures and upon her return from her visual inspection, Mrs. Carroll was pleased and satisfied, and gave him

the authority to proceed and have the dentures made from the wax impressions.

On December 16, 1976, the new dentures were delivered. Mrs. Carroll testified that they were too full for her mouth, the tooth size was much too large, that there was a substantial over-bite, and that the dentures caused her much pain and both plaintiffs testified as to the amount of difficulty the defendant had in placing the new dentures in Mrs. Carroll's mouth. The defendant explained that several adjustments might be necessary in order to minimize discomfort and have the dentures settled and scheduled Mrs. Carroll's next appointment for December 20, 1976, explaining that this would be the first of at least three successive weekly appointments. He also stated that the new dentures should be used continuously, notwithstanding any distress which might be experienced. There is a conflict of testimony concerning the prescription defendant gave Mrs. Carroll for distress. She testified she was told to place denture cream on the dentures while defendant testified he advised her to rub her gums with this cream.

Mrs. Carroll did not return to the defendant's office on December 20, 1976, and there is a conflict in testimony concerning this missed appointment. When she returned to his office on January 3, 1977, she had approximately one-quarter inch of substance on her gums and dentures which defendant removed. The defendant testified that this alone would cause the dentures to be ill-feeling and produce irritation and that Mrs. Carroll admitted she had not worn the dentures as instructed. Adjustments were made and further adjustments were made on January 4, 1977. On January 6, 1977, Mrs. Carroll again returned to the defendant's office and expressed her unhappiness and a conflict in testimony exists concerning defendant's statement that he found approximately ⅛-inch of substance on the dentures.

Mrs. Carroll testified that the problems with the dentures were not corrected, that the defendant stated there was nothing further he could do, and that she then returned the dentures. The defendant testified that he told Mrs. Carroll that she should give the dentures an opportunity to be worn correctly, reminded her of the importance of having failed to come in as scheduled, and that he would continue to make adjustments as necessary.

At this time, the plaintiffs demanded new dentures or their money back and defendant refused. Plaintiffs had paid $385 for the upper dentures, $390 for the lower dentures, and $92 for other related services. It is uncontroverted that Mrs. Carroll developed severe mouth sores and blisters, bloody gums and mouth swellings.

There was no allegation of negligence on the part of defendant

concerning his work on the dentures nor that he had failed to use the degree of care and skill which would ordinarily be exercised by dentists providing dentures. Thus the action is different from the typical complaint sounding in malpractice in that it rests solely upon the breach of the alleged warranties.

In count I of their complaint, plaintiffs allege that defendant breached the contract between the parties by making dentures which fail to comply with the alleged express oral warranties. As it is unclear from the record whether plaintiffs contend that these express warranties related to the dentures as goods or to the defendant's performance in producing the dentures, we shall consider both of these theories.

Considering first the allegation of breach of an express warranty relating to the dentures as goods, the relevant statutory authority is section 2—313 of the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 2—313). This section describes express warranties in three categories dealing with affirmation of facts or promises, descriptions, and samples or models. The provisions, however, apply only expressly to warranties by a seller to a buyer in connection with a sale of goods. (See Ill. Rev. Stat. 1975, ch. 26, par. 2—102; Ill. Rev. Stat. 1975, ch. 26, par. 2—313). Therefore it becomes necessary for us to consider whether this is such a situation.

■■ The Supreme Court of Illinois specifically addressed this question in resolving the propriety of optometric retail taxation. Analogizing to the medical and dental professions, the court stated that if a physician furnished medicine or dressings, he did not come within the designation of those involved in a calling which would result in the imposition of the tax. Likewise the court indicated the same reasoning applied to a dentist, even though his calling required the furnishing of "inlays, fills, or crowns, or even false teeth, if necessary to a completion of the dental service." (*Babcock v. Nudelman* (1937), 367 Ill. 626, 629, 12 N.E.2d 635, 637.) The court has also distinguished a dentist providing services and a laboratory manufacturing false teeth. See *People ex rel. Chicago Dental Society v. A.A.A. Dental Laboratories, Inc.* (1956), 8 Ill. 2d 330, 134 N.E.2d 285.

In *Gunter v. Cascio* (1948), 335 Ill. App. 287, 81 N.E.2d 766, the court addressed itself to this question in an action by a dentist to recover the balance owed him by a patient for whom he had made a set of dentures. The defendant contended that the dentures were unsatisfactory in that they hurt her, that she was embarrassed when eating and had to leave the table, and that the dentures "jumped out" when she sneezed. The plaintiff dentist had examined her mouth, taken an impression in wax, and made an upper and lower set of dentures in the usual fashion. In addressing the issue of an implied warranty, the court held that the dentist was not engaged in selling false teeth to the patient but rather that his charges

were for his skill and knowledge for his personal work in the examination and in the making of the dentures in question.

■■ It is true that *Gunter* was decided before the adoption of the Uniform Commercial Code in this State in 1961. At the time of the decision, the governing statute was the Uniform Sales Act which provided that "[a] sale of goods is an agreement whereby the seller transfers the property in goods to a buyer for a consideration called the price." (Ill. Rev. Stat. 1945, ch. 121½, par. 1(2).) In rather similar terms, the Code declares that a sale "consists in the passing of title from the seller to the buyer for a price." (Ill. Rev. Stat. 1975, ch. 26, par. 2—106 (1).) We see no basis in these definitions for overruling the *Gunter* holding and agree that a dentist is not engaged in selling dentures to his patients. Therefore, no express warranty concerning the dentures as goods may exist.

Considering next the allegation of breach of an express warranty relating to the defendant's performance in producing the dentures, our research indicates no court of review in Illinois has before been required to consider whether an action on a dentist's warranty to effect a particular result will lie. Most closely analogous to this question is the similar question of whether an action based upon the contract of a physician to effect a particular cure will lie.

In *Gault v. Sideman* (1963), 42 Ill. App. 2d 96, 191 N.E.2d 436, the defendant physicians recommended to the plaintiff patient that he undergo surgery to correct a ruptured intervertebral disk. Alleging resultant paralysis of his left leg, plaintiff brought a malpractice action against the defendants. At the close of his evidence, plaintiff was allowed leave to amend his complaint to allege breach of an express warranty to effect a cure of his condition. In holding that the pleadings in this case did not properly set forth such a cause of action, the court noted:

> "If the Illinois courts would consider enforceable a warranty by a physician (to cure a patient), it would be necessary to allege and prove the making of such a warranty and the plaintiff's reliance thereon, and it would also be necessary, under the facts and circumstances of this case, to allege and prove a separate consideration." (*Gault v. Sideman* (1963), 42 Ill. App. 2d 96, 191 N.E.2d 436, 441.)

The court added that it had been unable to find any case in Illinois which held a physician liable for an agreement that an operation would cure an existing condition.

In *Rogala v. Silva* (1973), 16 Ill. App. 3d 63, 305 N.E.2d 571, the plaintiff sought a sterilization operation because she already had five children and had experienced difficulties with her pregnancies. The defendant physician told her if he were to perform the operation, she would not be able to have any more children and would be able to have

sexual intercourse with her husband without becoming pregnant. When she gave birth to a sixth child after having the operation, she filed an action alleging the breach of an express warranty. After indicating that no Illinois court had previously considered whether an action based upon the contract of a physician to effect a particular cure will lie, the court stated that jurisdictions recognizing such an action had insisted that the contract be set forth explicitly in the complaint, proven by clear and convincing evidence, and supported by some consideration separate from the plaintiff's agreement to pay the physician for his services. The court concluded:

> "* * * After reviewing these authorities we are inclined to agree with our statement in *Gault v. Sideman* (1963), 42 Ill. App. 2d 96, 191 N.E.2d 436, that if the Illinois courts would consider enforcible such a warranty by a physician, it would be necessary to allege and prove the making of the warranty, the plaintiff's reliance thereon and a separate consideration." (*Rogala v. Silva* (1973), 16 Ill. App. 3d 63, 65, 305 N.E.2d 571, 573.)

After reviewing the evidence presented by the plaintiffs, the court held that the foregoing elements, particularly the existence of an express warranty, had not been established in that case.

■■ In the present case, we are dealing with the similar relationship between a dentist and his patient and feel that if the Illinois courts would consider enforcible an express warranty by a dentist, it would similarly be necessary to allege and prove the making of the warranty, the plaintiff's reliance thereon and a separate consideration. Our task is then to resolve the question of whether the complaint and the evidence in this cause established the foregoing elements.

■■ It was uncontroverted at trial that the plaintiffs paid the defendant $867. The components of this fee were $385 for the upper dentures, $390 for the lower dentures, and $92 for related services. It can therefore be seen that no monies were paid the defendant as a separate consideration for the alleged express oral warranty. We are not determining here that a special consideration would indispensably be required in all cases in order to maintain an action based upon a particular warranty. Without deciding whether the absence of a special consideration for a particular warranty would defeat an action of this kind, the presence or absence of a special consideration may be material in determining whether there is any actionable warranty. The major problem in determining the existence of an actionable warranty is whether statements relating to the accomplishment of a particular result are part of the therapy and hence within the general obligation to exercise reasonable skill and judgment or of some other character. It would follow that if there is a special consideration in return for the accomplishment of a special result it might

be that a cause of action would exist. The absence of a special consideration as in the instant case, while perhaps not conclusive, supports the conclusion that we reach, namely, that neither the pleadings nor the evidence disclose a warranty sufficient to support an action. The language used was employed to describe the treatment to be provided by the dentist as a part of his general obligation to treat the plaintiff with the reasonable skill required of his profession.

In count II of their complaint, plaintiffs allege that defendant breached an implied warranty of fitness for a particular purpose. The relevant statutory authority is section 2—315 of the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 2—315), which provides that where a seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods will be fit for such purpose. As is the case with section 2—313 of the Code dealing with express warranties, this provision applied only expressly to warranties by a seller to a buyer in connection with a sale of goods.

*Gunter v. Cascio* (1948), 335 Ill. App. 287, 81 N.E.2d 766, cited with approval in our discussion regarding the express warranty here alleged, is directly in point. There an implied warranty of fitness for a particular purpose was alleged as a defense to a dentist's action to recover the unpaid portion of his fee for providing dentures. The court held that the giving of an implied warranty instruction was reversible error and, as previously indicated, based its decision on the fact that a dentist is not engaged in selling dentures.

Plaintiffs contend that *Gunter* is no longer applicable as it predates the present statutory law on this subject and that present law indicates that the defendant is liable under this implied warranty theory. Plaintiffs base their contention on the theory that the implied warranty rule now encompasses anyone who selects or furnishes goods when such a person knows the particular purpose for which the goods are required and the buyer is relying on the skill or judgment of that person. An examination of section 2—315 of the Code (Ill. Rev. Stat. 1975, ch. 26, par. 2—315) reveals the provision to apply if "the buyer is relying on the seller's skill or judgment to select or furnish suitable goods * * *." Thus, plaintiffs' contention is without merit.

Accordingly, the judgment of the circuit court of Will County is reversed.

Reversed.

ALLOY and STENGEL, JJ., concur.