**Mark HEMPHILL, Plaintiff,**

**v.**

**Gale SAYERS, et al., Defendants.**

**Civ. No. 81–4418.**

United States District Court,
S.D. Illinois,
Benton Division.

Dec. 2, 1982.

Christopher J. Holthaus, O'Fallon, Ill., Kenneth R. Singer, St. Louis, Mo., for plaintiff.

Walker & Williams, Belleville, Ill., James B. Bleyer, Marion, Ill., Shari Rhode, John Feirich, Carbondale, Ill., for defendants.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

Before the Court are motions to dismiss filed by each defendant. They argue that plaintiff's complaint should be dismissed for failure to state claims upon which relief can be granted.[1] Fed.R.Civ.P. 12(b)(6).

From what the Court can make of plaintiff's second amended complaint, plaintiff alleges the following: Count I is against defendants Sayers, Dempsey, and Schulz for negligence; that count alleges that they failed to warn plaintiff of the dangers of the helmet, and negligently trained, coached, contracted for services, hired and supervised employees. Counts II and III are apparently against defendants Riddell Sporting Goods, Inc. (Riddell) and Bleyer Sport Mart, Inc. (Bleyer) for breach of implied warranties. *Ill.Rev.Stat.*, Ch. 26, Sections 2–314 and 2–315. Count IV alleges that defendants Sayers, Dempsey, Schulz, and Riddell are strictly liable in tort because they "manufactured, sold, furnished, to plaintiff" an unreasonably dangerous football helmet. Count V again sounds in negligence, alleging specific acts. Count V simply states that "defendants" were negligent, without reference to whom. There are six defendants in this lawsuit; it is unclear as to whom Count V is directed. Without discussing Count V as to each defendant, the Court believes that it should be dismissed with leave to refile. For plaintiff's convenience, the Court reiterates its statement in the April 21, 1982 Report of Status Conference: "[I]t has been determined by the Court that it is in the best interest of this litigation that the attorneys for the plaintiff refile a second amended complaint stating further with particularity and in a short concise manner as provided in Rule 8 of the Federal Rules the theories upon which claims for relief are sought, *along with stating against which specific defendants are charged.*" (emphasis added). Count V should be dismissed with leave to refile.

To add to the confusion, it appears from the briefing that plaintiff intends to include defendants Sayers, Dempsey, and Schulz in Counts II and III, which allege warranty theories. It appears to the Court that Counts II and III are directed only to defendants Riddell and Bleyer. However, since the Court believes plaintiff has no warranty action against defendants Sayers, Dempsey, and Schulz, their Motion to Dismiss will be considered as to Counts II and III as well. Each Motion to Dismiss will be considered separately.

### I. *Defendant Sayers, Dempsey, and Schulz' Motion to Dismiss*

These defendants, sued in their individual capacities, argue that they are immune from suit under the Eleventh Amendment. In the alternative, they argue that plaintiff's warranty and strict liability claims should be dismissed as to them.

### A. *Eleventh Amendment*

█ Defendants Sayers, Dempsey, and Schulz argue that at all relevant times, they were agents of the State of Illinois, and that Chapter V, Section D.11, Indemnification Policy of the Policies of the Board of Trustees, Southern Illinois University is applicable. That section provides that each employee:

> shall be indemnified by the Board of Trustees of Southern Illinois University against all costs and expenses reasonably incurred by or imposed upon him ... in connection with or resulting from an action, suit, proceeding, claim, or investigation, civil or criminal, to which he ... shall or may be made a party ... by reason, directly, or indirectly, of his action or omission to act in the scope of his appointment as a Trustee, officer, or employee of the University ....

On the basis of this provision, defendants Sayers, Dempsey, and Schulz argue that any judgment against them will be paid out of the state treasury, and thus this suit is

---

**1.** The Court understands through the news media that Plaintiff is now deceased, but since the Memorandum and Order was already drafted it is being entered as possible guidance for future amendments to the pleadings.

barred by the Eleventh Amendment. It is submitted that any tort claim against them must be filed in the Illinois Court of Claims pursuant to *Ill.Rev.Stat.,* ch. 37, Section 439.8. The Court disagrees.

It is undisputed that suits against Southern Illinois University must be brought in the Illinois Court of Claims. *Ill.Rev.Stat.,* ch. 37, Section 439.8(d). At issue is whether defendants Sayers, Dempsey, and Schulz, who are being sued in their individual capacities for their alleged acts of negligence committed as employees of Southern Illinois University, must be brought in the Court of Claims. The Court in *Watson v. St. Ann Hospital,* 68 Ill.App.3d 1048, 25 Ill.Dec. 411, 386 N.E.2d 885 (1st Dist.1979) considered a similar issue and held that Illinois employees are not exempt from liability for their own negligence simply because they were acting in their official capacities. Such a liability suit need not be in the Court of Claims. The Court reasoned that the remedy of damages would not operate to control the action of the State or subject it to liability. Citing *Madden v. Kuehn,* 56 Ill. App.3d 997, 14 Ill.Dec. 852, 372 N.E.2d 1131 (2d Dist.1978), the Court found that when the negligent acts of state employees are nongovernmental in nature, as opposed to obligations incurred solely by virtue of holding a public office, the damage remedy involved would not control the actions of the state.

Any liability of these defendants would not control the actions of the State. As made clear by plaintiff, these defendants are being sued in their individual capacities. Further, the alleged negligent acts of each defendant are not "obligations incurred solely by virtue of holding a public office." *Madden, supra,* 14 Ill.Dec. at 855, 372 N.E.2d at 1134. Instead, any liability would flow from negligence in maintaining a football team.

That the Eleventh Amendment does not bar this suit is underscored by the Court's decision in *Rutledge v. Arizona Board of Regents,* 660 F.2d 1345 (9th Cir.1981). In *Rutledge* the Court considered a similar Eleventh Amendment argument. The plaintiff was asserting a negligence claim against a state university's athletic director and football coach sued in their individual capacities. The Court found that the Eleventh Amendment was not a bar:

> The district court extended the Eleventh Amendment bar to these appellees on the ground that "the alleged acts were committed in the interest of the Arizona State University football program" and that nothing suggests that "the alleged conduct falls outside the scope of Kush's or Maskill's scope of employment." This is not sufficient ground to invoke the Amendment's bar. That bar is not automatically applicable to a suit brought against a state official in his individual capacity alleging the commission by him of a common law tort in the course of his employment. *Johnson v. Lankford,* 245 U.S. 541, 38 S.Ct. 203, 62 L.Ed. 460 (1918).

*Rutledge, supra,* 660 F.2d at 1350.

Further, defendants Sayers, Dempsey and Schulz' reliance on Southern Illinois University's indemnity agreement is misplaced. The Supreme Court in *Edelman v. Jordan,* 415 U.S. 651, 653, 94 S.Ct. 1347, 1351, 39 L.Ed.2d 662 (1974) stated that "the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment...." The Court in *Rutledge* recognized the significance of any provision requiring state indemnification for employee negligence: "Neither the district court nor Miller have pointed to any law of the State of Arizona that would require that any damages, for which Miller would be liable for failure to supervise Kush and Manskill properly, be paid from state funds." *Id.* at 1350. Here, however, it is altogether unclear whether any judgment would be paid by the State of Illinois. Southern Illinois University agreed to indemnify their employees provided that "the cost or expense is not reasonably recoverable from any other source." As pointed out by plaintiff, alternative sources potentially exist, which would avoid application of the indemnity agreement. Since indemnification is con-

tingent at best, dismissal of defendants Sayers, Dempsey, and Schulz at the pleading stage would be wholly inappropriate.

### B. *Warranty Theories*

As noted, Counts II and III allege breach of warranties. *Ill.Rev.Stat.,* Ch. 26, Sections 2–314, 2–315. Although it is doubtful whether these counts are directed to defendants Sayers, Dempsey, and Schulz, it is clear that plaintiff has no warranty action against them.

■ Count II is governed by Section 2–315. At issue is whether these defendants can be liable under this section. The complaint alleges that Sayers was the university's athletic director and Dempsey was and is the football coach, and Schulz was the athletic trainer. These parties cannot be held liable under Section 2–315. The Court in *Carroll v. Grabavoy,* 77 Ill.App.3d 895, 33 Ill.Dec. 309, 396 N.E.2d 836 (3rd Dist.1979) held that the implied warranty of fitness for a particular purpose applies only to warranties made by a seller to a buyer. Specifically, the Court held that the Section 2–315 warranty did not apply when a dentist furnished dentures to a patient. In rejecting an argument identical to the one made by plaintiff here, that Court stated:

> Plaintiffs base their contention on the theory that the implied warranty rule now encompasses anyone who selects or furnishes goods when such a person knows the particular purpose for which the goods are required and the buyer is relying on the skill or judgment of that person. An examination of Section 2–315 of the Code (Ill.Rev.Stat.1975, ch. 26, par. 2–315) reveals the provision to apply if "the buyer is relying on the *seller's* skill or judgment to select or furnish suitable goods * * *" (emphasis added) [sic]. Thus plaintiffs' contention is without merit.

*Carroll, supra,* 33 Ill.Dec. at 313, 396 N.E.2d at 840. (emphasis added). Simply stated, since these defendants are not sellers, Section 2–315 does not apply to them.

■ For the same reason, plaintiff's Section 2–314 theory in Count III fails against these defendants. Section 2–314 creates liability only for "the seller [who] is a merchant with respect to goods of that kind." As was made clear by the Court in *Sieman v. Alden,* 34 Ill.App.3d 961, 341 N.E.2d 713, 715 (2d Dist.1975), "the definition of merchant within 2–314 is a narrow one and that the warranty of merchantability is applicable only to a person who, in a professional status, sells the particular kind of goods giving rise to the warranty." Defendants Sayers, Dempsey, and Schulz do not qualify as merchants.

It is clear that plaintiff's warranty theories do not apply to these defendants, and that Counts II and III should be dismissed as to them.

### C. *Strict Liability in Tort*

■ Count IV alleges that defendants Sayers, Dempsey, and Schulz are strictly liable in tort to plaintiff. This Count must also fail as to these defendants. These defendants are not part of the original producing and marketing chain. Liability will not be imposed upon a defendant who is not a part of the original producing and marketing chain. *See Peterson v. Lou Bachrodt Chevrolet Co.,* 61 Ill.2d 17, 329 N.E.2d 785 (1975); *Keene v. Dominick's Finer Foods, Inc.,* 49 Ill.App.3d 480, 7 Ill. Dec. 341, 343, 364 N.E.2d 502, 504 (1st Dist. 1977). The rationale for that qualification was explained in *Keene:*

> [I]t becomes apparent that the cornerstone of liability rests upon the defendant's active participation in placing the product into commerce for use and consumption by others. One of the underlying reasons for imposing strict liability is to ensure that losses are borne and subsequently reaped the profit of marketing the allegedly defective product.

7 Ill.Dec. at 343, 364 N.E.2d at 504. *See also Templeton v. Blaw-Knox Co.,* 49 Ill. App.3d 1057, 7 Ill.Dec. 950, 365 N.E.2d 235 (3rd Dist.1977). This rationale underscores why defendants Sayers, Dempsey, and Schulz cannot be held strictly liable in tort for the allegedly defective football helmet.

They did not create the risk and reap the profits. Accordingly, Count IV must be dismissed as to these defendants.

## II. *Defendant Riddell's Motion to Dismiss*

Defendant Riddell argues that plaintiff's warranty theories under *Ill.Rev.Stat.,* ch. 26, Sections 2–314 and 2–315 should be dismissed because no privity exists. As for plaintiff's strict liability theory, defendant Riddell submits that critical elements are missing from plaintiff's pleading. These arguments will be considered separately.

### A. *Warranty Theories*

■ Defendant Riddell argues that because it lacks contractual privity with plaintiff, it cannot be held liable for breaching the implied warranty of merchantability, Section 2–314, or the implied warranty of fitness for a particular purpose, Section 2–315. Although direct contractual privity is not always necessary for an implied warranty theory, the Court agrees with defendant Riddell that plaintiff cannot succeed under either Sections 2–314 and 2–315, and Counts II and III should be dismissed.

The Court in *Slate Printing Company v. Metro Envelope Co.,* 532 F.Supp. 431 (N.D. Ill.1982), analyzing state law, found that a plaintiff must satisfy at least one of three possibilities before bringing a warranty action: (1) there must be privity of contract between the plaintiff and the defendant, *Suvada v. White Motor Co.,* 32 Ill.2d 612, 616–18, 210 N.E.2d 182, 184–85 (1965); *In re Johns-Manville Asbestosis Cases,* 511 F.Supp. 1235, 1239 (N.D.Ill.1981); (2) the plaintiff must be in a position equivalent to that of a third-party beneficiary of the defendant's sales contract, *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.,* 86 Ill.App.3d 980, 992–93, 42 Ill.Dec. 25, 34, 408 N.E.2d 403, 412 (1st Dist.1980); *Rhodes Pharmacal Co. v. Continental Can Co.,* 72 Ill.App.2d 362, 368, 219 N.E.2d 726, 730 (1st Dist.1966); or (3) the plaintiff must otherwise be able to sustain a tort action against the defendant, *Berry v. G.D. Searle & Co.,* 56 Ill.2d 548, 558, 309 N.E.2d 550, 556 (1974). *Slate Printing Company, supra,* 532 F.Supp. at 434. At issue is whether plaintiff falls into any of these categories. In the Court's opinion, he does not.

■ Analysis must begin with Section 2–318. That section defines the scope of the statutory warranties:

A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this Section.

*Ill.Rev.Stat.,* Ch. 26, Section 2–318. This language defines the classes of persons who may benefit from implied warranties who stand in "horizontal" non-privity to the last buyer in the distributive chain. A horizontal non-privity plaintiff has been defined as not a buyer in the distributive chain but one who uses or is otherwise affected by the product. *Knox v. North American Car Corp.,* 80 Ill.App.3d 683, 35 Ill.Dec. 827, 831, 399 N.E.2d 1355, 1359 (1st Dist.1980); White & Summers, *Uniform Commercial Code* Section 11–2 at 399 (2d ed. 1980). In contrast, a "vertical" non-privity plaintiff is a buyer in the distributive chain who did not purchase from the defendant. *Knox, supra;* Wright & Summers, *supra.* Subsection 3 of the Official Comment to Section 2–318 indicates that the class of vertical non-privity plaintiffs entitled to warranty protection may be expanded by judicial fiat:

This section expressly includes as beneficiaries within its provisions the family, household, and any guests of the purchaser. Beyond this, the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain.

The text of Section 2–318 and its Official Comment 3 have been interpreted to mean that although the class of vertical non-privity buyers entitled to warranty protection

may be judicially expanded and contracted, the class of horizontal non-privity plaintiffs entitled to such protection has been statutorily limited to "natural persons" in the "family or household of the buyer and to his guests" where it is "reasonable to expect that such persons may use, consume or be affected by the goods." *Knox, supra,* 35 Ill.Dec. at 831–32, 399 N.E.2d at 1359–60. A horizontal non-privity plaintiff not within the language of Section 2–318 is not entitled to warranty protection. As the *Knox* Court stated: "We cannot disregard or enlarge the express limitations of Section 2–318." 399 N.E.2d at 1359, 35 Ill.Dec. at 831.

This conclusion is buttressed by considering alternative versions of section 2–318 which the General Assembly rejected:

Alternative B. A seller's warranty whether express or implied extends to natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

Alternative C. A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section with respect to injury to the person of an individual to whom the warranty extends.

These alternatives obviously contemplate a much more expansive class of horizontal non-privity plaintiffs entitled to warranty protection. The Court agrees that "the legislature consciously chose to limit a seller's liability for breach of warranty to the specific classes enumerated therein." *Knox, supra,* 399 N.E.2d at 1360, 35 Ill.Dec. at 832. If this Court chose to exceed the express limitations of Section 2–318, the judgment of the legislature would be substituted. ■ The recognized exceptions to the privity requirement in warranty actions have developed in Illinois according to Official Comment 3, which contemplates that the class of vertical non-privity plaintiffs

may be determined judicially. Those exceptions include: (1) a plaintiff standing in a third-party beneficiary relationship to the seller's sales contract; and (2) a plaintiff who may otherwise sustain a tort action against the seller. *Slate Printing Co., supra,* 532 F.Supp. at 434. Illinois case law reflects that these two departures from the privity requirement were developed as an expansion of the class of vertical non-privity plaintiffs, as contemplated by Official Comment 3.

In *Rhodes Pharmacal Company v. Continental Can Company,* 72 Ill.App.2d 362, 219 N.E.2d 726, 732 (1st Dist.1966), the Court enunciated the test for the third-party beneficiary exception to the privity requirement:

[T]he implied warranty of fitness imposed by law on a manufacturer may be enforced directly against the manufacturer by a third-party user, where, as alleged in the instant case, the manufacturer (1) was aware of the purpose for which the product was to be put, and (2) knew of the third-party user's reliance that the product would be fit for the purpose intended.

Although couched in broad language, this test was declared in the context of deciding the rights of a vertical non-privity plaintiff. *Rhodes Pharmacal Co.* involved a plaintiff who purchased defective aerosol cans and consequently was in the distributive chain linked to the defendant manufacturer. That Court was not limited to the narrow class of horizontal non-privity plaintiffs defined in Section 2–318.

Other Illinois cases applying the third-party beneficiary exception involve plaintiffs in the distributive chain. In *Lango v. Division Paint & Garden Supply Co.,* 75 Ill.App.2d 384, 221 N.E.2d 47 (1st Dist.1966), the plaintiff was a buyer and therefore was in the distributive chain. Likewise, the Court in *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts, Inc.,* 86 Ill.App.3d 980, 42 Ill.Dec. 25, 408 N.E.2d 403 (1st Dist. 1980) considered the rights of a buyer who ordered from one defendant goods which were manufactured and delivered by anoth-

er defendant. Again, these courts were not limited to the express class defined in Section 2–318, but were able to expand the class of vertical non-privity plaintiffs as contemplated by Official Comment 3.

The second exception to the privity requirement was enunciated in *Berry v. G.D. Searle & Co.,* 56 Ill.2d 548, 309 N.E.2d 550 (1974). In *Berry,* the plaintiff sued the manufacturer of a birth control pill prescribed and sold to her by a codefendant. 309 N.E.2d at 552. The Court decided that since no privity is required in a tort action, privity should not be required under warranty. The Court held that plaintiff could maintain a warranty action against the manufacturer:

> [W]e are of the opinion that privity is of no consequence when a buyer who purportedly has sustained personal injuries predicates recovery against a remote manufacturer for breach of an implied warranty under the Code.

*Id.* at 556. The Court so held after recognizing that Official Comment 3 authorized judicial expansion of warranty protection "to other persons in the distributive chain." *Id.* at 556 *quoting* Official Comment 3 to Section 2–318. As noted, that comment allows expansion only to vertical non-privity plaintiffs.

Cases involving horizontal non-privity plaintiffs have adhered to the express limitations of Section 2–318. As noted, that provision "was meant to act as a limitation only upon a seller's liability for breach of warranty to those who stand in horizontal [non-]privity. . . ." *Knox, supra,* 35 Ill.Dec. 831, 339 N.E.2d at 1359. In *Knox,* a plaintiff, an employee of the cosignee of a leased boxcar, brought a warranty action against the boxcar's lessor. Being outside the distributive chain, the plaintiff was found unentitled to warranty protection. The Court recognized that since the horizontal non-privity plaintiff did not qualify under Section 2–318 and the Court was statutorily precluded from extending warranty protection to plaintiff pursuant to Official Comment 3, plaintiff's warranty theory must fail.

Likewise, in *In re Johns-Manville Asbestosis Cases,* 511 F.Supp. 1235 (N.D.Ill.1981), the Court considered the warranty rights of plaintiffs outside the distributive chain. The plaintiffs were past and present employees of Johns-Manville. They sought recovery from defendants who supplied their employer with raw asbestos, which caused respiratory diseases. The Court held that the horizontal non-privity plaintiffs could not sue for breach of warranty:

> [T]he General Assembly has dealt in *express* terms with the extended scope of the sellers' warranties. It would be impermissible judicial legislation to ignore the strong negative implications from the statute's non-coverage of plaintiffs' status. Certainly the Illinois courts have not interpreted Section 2–318 as providing the basis for a warranty action by a plaintiff who is not a buyer or a member of a buyer's household, and this Court will not rewrite the statute either.

*Id.* at 1239–40. The rationale for dismissing the plaintiffs' warranty claims was that those outside the distributive chain who do not qualify under Section 2–318 are statutorily unentitled to warranty protection.

Plaintiff is a user outside the distributive chain. He was supplied the football helmet by Southern Illinois University, the last buyer in the distributive chain. As discussed, it would be inappropriate for the Court to afford him warranty protection pursuant to Official Comment 3. That comment concerns vertical non-privity. At issue is whether plaintiff falls within the express language of Section 2–318. In the Court's opinion, he does not.

As noted, Section 2–318 extends warranty protection to "any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." Section 2–318. Plaintiff is neither a household member or a guest. In *Knox,* the Court suggested that employees of the last purchaser may qualify under Section 2–318. The rationale is that the employer-

employee relationship is functionally equivalent to the relationship between a buyer and his family member or guest. *See McNally v. Nicholson Manufacturing Co.,* 313 A.2d 913 (Me.1973). If this reasoning is valid, an argument could be made that a university's football player would also fall under Section 2–318. However, the Court declines to follow the speculation in *Knox.*

First, the *Knox* Court's statement that a buyer's employees may be entitled to warranty protection is dictum. In no way was the statement viewed as the applicable law in Illinois. Second, it has been subsequently determined that a buyer's employees are not entitled to warranty protection under Section 2–318. *In re Johns-Manville Asbestosis Cases, supra.* Plaintiff argues that those employees were denied recovery solely because the warranties did not cover the type of damage suffered. The Court disagrees. The Court in *Asbestosis Cases* clearly denied warranty coverage to the employees on the basis of their status. Third, the Court believes that by including a buyer's employee, or football player, within Section 2–318, that section would be judicially rewritten. Had the legislature intended that these plaintiffs be included in Section 2–318, it would not have adopted the most narrowly worded alternative. The Court declines to amend Section 2–318 to extend warranty protection to family members, guests, "or their functional equivalents."

Accordingly, Counts II and III should be dismissed as to defendant Riddell.

**B.** *Strict Liability in Tort Theory*

Defendant Riddell argues that Count IV fails to allege: (1) the nature, character or description of the product's condition making it unreasonably dangerous; and (2) that the product's allegedly dangerous condition existed at the time it left the manufacturer. Defendant Riddell suggests Count IV should be dismissed with leave to refile. The Court agrees.

▮ In Illinois, products liability plaintiffs must "prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably

dangerous one and that the condition existed at the time it left the manufacturer's control." *Suvada v. White Motor Co.,* 32 Ill.2d 612, 210 N.E.2d 182, 188 (1965). The dangerous condition may be a result of a defect in design as well as one of manufacture. *Wyant v. J.I. Case Company, Inc.,* 633 F.2d 1254, 1256 (7th Cir.1980); *Kerns v. Engelke,* 76 Ill.2d 154, 28 Ill.Dec. 500, 390 N.E.2d 859, 862 (1979).

▮ Plaintiff has not properly alleged his product liability claim. Even given the liberal notice pleading standard, plaintiff's allegation of the condition of the helmet is insufficient. Presumably, paragraph 4 of plaintiff's Count IV contains why the helmet was unreasonably dangerous: "That the said helmet was defective and in an unreasonable dangerous condition for use as protective headwear for football games in that it suddenly and unexpectedly failed to protect plaintiff's cervical spine when put to the use intended...." This language explains what the helmet allegedly did without describing the condition rendering it unreasonably dangerous. It is impossible to infer what type of defect is alleged. Further, plaintiff alleges that "said defective and unreasonably dangerous helmet was in substantially the same condition at the time of Mark Hemphill's injury as it had been when sold, furnished, manufactured, placed in commerce or supplied by defendants to plaintiff." The Court agrees with defendant Riddell that this language is not the same as alleging that the unreasonably dangerous condition existed at the time the product left the manufacturer's control.

Count IV should be dismissed with leave to refile a third amended complaint which cures these defects.

**III.** *Defendant Bleyer's Motion to Dismiss*

Defendant Bleyer argues that plaintiff's warranty theories, in Counts II and III, should be dismissed because privity is lacking. Count V should be dismissed, it is argued, because it is unintelligible. The Court has already decided that Count V should be dismissed with leave to refile.

As to plaintiff's warranty theories, the reasoning applicable to defendant Riddell applies with full force to defendant Bleyer. Plaintiff remains in horizontal non-privity and does not qualify as a family member or guest under Section 2–318. The implied warranties of Sections 2–314 and 2–315 do not benefit plaintiff.

■ To avoid confusion, the Court states that it believes that plaintiff does not and could not assert his strict liability in tort theory against defendant Bleyer. Defendant Bleyer has stipulated that defendant Riddell is the helmet's manufacturer. By operation of *Ill.Rev.Stat.*, ch. 110, Section 801 *et seq.*, the certifying defendant cannot be held strictly liable in tort.

Accordingly, Counts II and II should be dismissed; Count V, if it purports to state a claim against defendant Bleyer, should be dismissed with leave to refile.

### IV. *Conclusion*

The Court finds as follows:

1. Defendants Sayers, Dempsey and Schulz' Motion to Dismiss is hereby GRANTED in part and DENIED in part.

2. Defendant Riddell's Motion to Dismiss is hereby GRANTED.

3. Defendant Bleyer's Motion to Dismiss is hereby GRANTED.

4. Counts II and III are hereby DISMISSED as to all defendants.

5. Count IV is hereby DISMISSED as to defendants Sayers, Dempsey, Schulz and Bleyer.

6. Count IV is hereby DISMISSED as to defendant Riddell, with leave to refile a third amended Count IV only against defendant Riddell, within ten (10) days of this order. Said amended complaint shall cure the defects discussed in this order.

7. Count V is hereby DISMISSED with leave to refile. Plaintiff is GRANTED leave to file a third amended Count V, which indicates which defendants are charged, and corresponds enumerated acts with the respective defendant, within ten (10) days of this order.

IT IS SO ORDERED.