**WICO CORPORATION, Plaintiff,**

v.

**WILLIS INDUSTRIES, Defendant.**

### No. 83 C 1470.

United States District Court,
N.D. Illinois, E.D.

July 11, 1983.

Howard M. Hoffman, Paul T. Fox, Holleb & Coff, Chicago, Ill., for plaintiff.

William T. Huyck, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

WICO Corporation ("WICO") sues Willis Industries ("Willis") for rescission and damages, alleging Willis' repudiation (Count I) and substantial breach (Count II) of two written contracts (the "Agreements," Complaint Exs. A and B). Willis has moved under Fed.R.Civ.P. ("Rule") 12(b)(6) to dismiss for failure to state a claim upon which relief may be granted.[1] For the reasons stated in this memorandum opinion and order that motion is denied, but WICO's prayer for rescission of the Agreements is stricken from both Counts.

### Facts [2]

WICO is engaged in the manufacture and sale of electronic components, systems and equipment used by the electronic games industry. Willis manufactures and sells silk-screen products used by that industry on video games ("game graphics") and in video game rooms ("wall graphics").

Under the Agreements executed in June and July 1982 (respectively "Ex. B" and "Ex. A"), Willis granted WICO exclusive distributorships of Willis wall graphics (Ex. A) and game graphics (Ex. B). Among the duties imposed on the parties were joint obligations to develop worldwide demand

---

**1.** Although Willis' motion centers on the language of the Agreements, those are deemed incorporated by reference into the Complaint. Thus Willis' motion has not been transformed by the last sentence of Rule 12(b)(6) into a motion for summary judgment under Rule 56.

**2.** This recitation implies no *findings* of fact. Rather, the Complaint has been given the assumptions Rule 12(b)(6) calls for (*Mathers*

*Fund, Inc. v. Colwell Co.,* 564 F.2d 780, 783 (7th Cir.1977)):

> [O]n a motion to dismiss, a complaint must be construed in the light most favorable to the plaintiff, the allegations thereof being taken as true; and, if it appears reasonably conceivable that at trial the plaintiff can establish a set of facts entitling him to some relief, the complaint should not be dismissed.

and to consult on the design of future products. WICO's extensive promotional obligations included undertakings as to (1) the use of Willis trademarks and logos, (2) extensive advertising including sales displays, mail marketing and sales contests and (3) the hiring, training and implementation of a sales staff. Finally, WICO entered into restrictive covenants as to the sale or promotion of products competitive with Willis' wall graphics and game graphics.

WICO's purchase commitment was to buy merchandise to the extent needed to maintain an adequate inventory. No fixed amount of merchandise was specified in either Agreement, although the wall graphics Agreement called for WICO's initial purchase of 250 sets of graphics, subject to Willis' acceptance of WICO's order. ·

Despite WICO's full performance, within several months after the Agreements were executed Willis first threatened to, and then in a February 18, 1983 letter (Complaint Ex. C) did, repudiate the Agreements by stating it would make direct sales in competition with WICO. In addition to that written repudiation, Willis acted in various ways to breach the Agreements.

Each Agreement contained express provisions governing termination, limited to termination for cause. No attempt was ever made by Willis to comply with those termination provisions. Indeed, no grounds existed at any time on which Willis could properly have terminated.

### Willis' Potential Liability

Essentially Willis contends the Agreements allowed it to make direct sales, so they could not be "breached" by Willis' alleged repudiation and other acts. Willis relies on Section 4.01 of each Agreement (Ex. A is quoted first and Ex. B second):

Either party may terminate this agreement for cause, upon 45 days written notice given to the other party, provided in said written notice, the grounds of default and or cause are set forth, and further provided that the defaulting party after such notice does not cure or otherwise take steps to cure said default

and or cause within said period. With regard to the provisions of sections 3.04, 3.05 and 3.06 respectively, the Company reserves the right to terminate the "exclusivity" of this Distribution Agreement for any uncorrected breach thereof.

\*    \*    \*    \*    \*    \*

Either party may terminate this agreement for cause, upon 45 days written notice given to the other party, provided in said written notice, the grounds of default and or cause are set forth, and further provided that the defaulting party after such notice does not cure or otherwise take steps to cure said default and or cause within said period. With regard to the provisions of Section 3.04(f), and the variously established areas and assigned annual sales volumes in dollars, the Company reserves the right to terminate the "exclusivity" of this Distribution Agreement as to that area or areas which failed to achieve in sales the minimum amounts specified, without affecting those other areas which do comply.

Ex. A's cross reference to "Section 3.05" concerns the parties' joint obligation to agree on minimum sales volumes of wall graphics. Ex. B's reference to "Section 3.04(f)" incorporated an exhibit setting forth annual sales volumes of game graphics for specified geographic areas.

■ Willis argues (Mem. 3–4) it did not breach the Agreements because the Complaint itself reveals WICO in fact failed (1) to agree on sales quotas as required by Ex. A and (2) to meet the sales quotas required under Ex. B. That reading of the Complaint is nonsense—and also irrelevant. Ex. A § 3.05 specifically requires Willis' resort to that Agreement's termination provisions if WICO and Willis failed to agree on minimum wall graphics sales volumes. And Ex. B § 4.01 simply allows Willis to use the termination provisions as to select geographic areas—but the termination procedures themselves still had to be followed.

■ Because Complaint ¶¶ 1.9(d), 1.22, 2.9(d) and 2.24 allege the termination provisions were ignored, WICO clearly may

prove a set of facts entitling it to some relief. At a minimum WICO may be able to prove Willis announced its intention to and did breach the Agreements' termination provisions. That is enough to survive Willis' present motion.

### WICO's Potential Remedies

Willis also argues (Mem. 4–6; R.Mem. 1–6) rescission is not a proper remedy under the facts alleged. That argument does not support dismissal of the Complaint, but only the striking of a remedy sought (familiar pleading principles teach the prayer for relief is not part of the cause of action itself, which is a function of the *facts* alleged in the complaint).[3]

Willis contends (1) the Agreements were contracts for the sale of goods and (2) WICO admits its acceptance of the goods and does not allege their nonconformity and therefore (3) WICO is not entitled to rescission as a remedy under UCC Article 2. See Ill.Rev.Stat. ch. 26, §§ 2–607, 2–714.[4] WICO responds (Ans. Mem. 9–15) (1) the Agreements were not contracts for the sale of goods and (2) even if they were, their service components predominate and therefore (3) UCC Article 2 is not applicable.

Illinois applies the "dominant purpose" test to determine whether contracts are for sale of goods or for services when both are plainly involved. *See* Davenport, Murray and Cassling, "Illinois Code Comment," Ill.Ann.Stat. ch. 26, § 2–102 (Smith-Hurd 1983 Supp.), at 29, and cases cited. Although the Agreements are in many ways hybrids, their sale-of-goods purpose clearly predominates.

WICO seizes on the facts the Agreements (1) did not require a specific purchase of goods (Ans.Mem. 9–10) and (2) set out a host of service responsibilities (*id.* at 11–12). But sale of goods is nevertheless the raison d'etre of the Agreements: All the service aspects of the Agreements are aimed at developing and increasing the market for Willis' graphics, and those graphics were to be sold by WICO. This simply is not a situation in which sale of goods is really incidental to the rendition of services. *Cf. Carroll v. Grabavoy,* 77 Ill.App.3d 895, 899–901, 33 Ill.Dec. 309, 311–313, 396 N.E.2d 836, 838–40 (3d Dist.1979) (finding dentist's provision of dentures was not a sale of goods); *Executive Centers of America, Inc. v. Bannon,* 62 Ill.App.3d 738, 741–42, 19 Ill.Dec. 700, 702–03, 379 N.E.2d 364, 366–67 (3d Dist.1978) (finding golf professional's contract was predominantly contract for services although he was required to purchase 20 golf carts from country clubs). Thus, even though WICO was not *simply* a distributor of goods, the Agreements *were* for the sale of goods—without such sale the Agreements were meaningless. Accordingly, rescission is not an available remedy in this action.

### Conclusion

Willis' motion to dismiss is denied. WICO's prayer for rescission of the Agreements is stricken. WICO is granted leave to amend its Complaint accordingly on or before July 22, 1983. Willis is ordered to answer the Amended Complaint or otherwise plead on or before August 5, 1983. A status hearing in this action is hereby scheduled for August 26, 1983 at 9:15 a.m.

---

**3.** Though each Count of the Complaint is styled "Action for Recission and Damages," the prayers for relief ask only for a declaration of rescission of the Agreements, plus return of the purchase price of WICO's remaining inventory, plus reimbursement for WICO's promotional expenses. WICO's *damages* would rather seem to be measured by its losses due to Willis' actions—quite a different figure. But failure to ask the correct form of relief is not fatal under *Mathers Fund. See Craft v. Board of Trustees,* 516 F.Supp. 1317, 1323 (N.D.Ill.1981).

**4.** Neither party disputes Illinois law applies to this action under the principles of *Klaxon Co. v. Stentor Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Moreover Illinois law is dictated whether Illinois courts continue to apply the old place-of-making contracts choice-of-law rule or the more modern "most significant contacts" test. *See Overseas Development DISC Corp. v. Sangamo Construction Co.,* 686 F.2d 498, 510–11 & n. 43 (7th Cir.1982).