**OAK STATE PRODUCTS, INC., Plaintiff,**

v.

**ECOLAB, INC., Defendant.**

**No. 90–1190.**

United States District Court, C.D. Illinois.

Feb. 1, 1991.

**236**

Steven C. Mills, Springfield, Ill., for plaintiff.

Nicholas J. Bertschy, Peoria, Ill., Thomas F. Tobin, Chicago, Ill., for defendant.

## ORDER

MIHM, District Judge.

Before the Court is the Defendant Ecolab's Motion to Dismiss (# 5). The Magistrate recommended that the Motion to Dismiss be denied. This Court affirms the recommendation of the Magistrate and denies the Motion to Dismiss.

## BACKGROUND

Before the Court is an action for damages filed pursuant to Illinois tort and contract law. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties. Ecolab is a Delaware corporation with its principal place of business in St. Paul, Minnesota. Oak State Products, Inc. is an Illinois corporation with its principal place of business in Illinois.

The Complaint alleges that Oak State Products (hereinafter referred to as Oak State), which is in the business of manufacturing and distributing foodstuffs, made an oral contract with Ecolab to provide pest fumigation at Oak State's place of business, including the flour storage bins. Ecolab allegedly represented that it would not be necessary to empty the storage bins in order to perform the fumigation because the chemicals used would not harm the flour in the bins. The fumigation took place on September 5, 1988. Allegedly, within a few days thereafter, the flour smelled tainted and the products made from the flour were not fit for sale. Oak State alleges that the fumigation was the cause of the tainted flour.

The Complaint is in four counts. Count I alleges a breach of an express warranty. Count II alleges that Ecolab negligently chose the wrong solution to fumigate the flour bins and negligently applied the solution to the flour bins. Count III alleges a negligence action based upon res ipsa loquitur. And, Count IV alleges a breach of an oral contract. Oak State seeks damages for the loss of the flour, the replacement of the tainted food products, the loss of good will, and the lost profits. The Defendant has moved to dismiss the entire Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure because it contends that the Complaint fails to state any claim for which relief may be granted.

## COUNT I

Ecolab asserts that Count I should be dismissed because the transaction in question was predominated by the sale of services, rendering the provisions of Article 2 of the Illinois Commercial Code inapplicable. However, Oak State concedes that the contract in question was a service contract, and it concedes that the Uniform Commercial Code does not apply. Oak State asserts that it is seeking relief for an express warranty under general contractual law.

Ecolab contends that there is no common law warranty outside the Uniform Commercial Code on which Oak State may rely and that warranties are limited to the sales of goods and do not attach to the performance of services. *Rosos Litho Supply Corp. v. Hansen*, 123 Ill.App.3d 290, 296, 462 N.E.2d 566, 571–572, 78 Ill.Dec. 447, 452–453 (1st Dist.Ill.1984). Further, Ecolab asserts that, as a service, no warranties can be made or implied as a matter of law because the specific rights and remedies addressed by the Uniform Commercial Code preempt any common law remedy. *See, Bickett v. Buffalo Bills, Inc.*, 122 Misc.2d 880, 472 N.Y.S.2d 245, 248 (1983); *Alaska Airlines, Inc. v. Lockheed Aircraft Corp.*, 430 F.Supp. 134 (D.Ala.1977). Thus, Ecolab asserts that Count I must be dis-

missed because express warranties are limited to the sales of goods.

Oak State contends that the *Rosos* case is distinguishable. This Court agrees. The plaintiff in the *Rosos* case was asserting that an architect's contractual duties (or warranties) encompass not only those expressed in the contract but also other duties implied by the contract. *Rosos*, 462 N.E.2d at 571, 78 Ill.Dec. at 452. The court simply concluded that the Uniform Commercial Code was inapplicable to the provision of professional services; therefore, it could not allow the Plaintiff to assert a cause of action for an implied warranty. *Id.* The court went on to explain:

> Nor is there any other implied common law or statutory warranty applicable to an architect's services. (Citation omitted). In Illinois "in the absence of a special agreement ... [the architect] does not imply or guaranty a perfect plan or a satisfactory result." (Citation omitted). The absence of implied warranties in architect's services makes it possible for an architect to effectively insulate himself from liability by omitting certain express warranty terms from his contract.

*Id.* 462 N.E.2d at 571–572, 78 Ill.Dec. at 452–453.

■ This quotation from the *Rosos* case makes it clear that the court was talking about implied warranties. This Court simply cannot agree with the proposition that express warranties cannot exist in service contracts. If this were the case, this would severely limit a party's ability to freely contract. The argument that Article 2 of the Uniform Commercial Code, which applies to transactions in goods (*see*, Ill. Rev.Stat. ch. 26, § 2–102), preempts all express warranties in service contracts is simply too broad for this Court to accept.

With regard to the out of state cases cited by Ecolab, this Court adopts the reasoning of the Magistrate and finds that these cases are not persuasive and are distinguishable on their facts. Further, even if the cases are not distinguishable, they do not apply because this Court is obligated to apply Illinois law. Based upon Illinois case law, this Court believes that Oak State can state a cause of action for the breach of an express warranty in a service contract as several Illinois cases have implicitly recognized that such a cause of action exists. *See, Rogala v. Silva*, 16 Ill.App.3d 63, 305 N.E.2d 571 (1st Dist.Ill.1973); *Carroll v. Grabavoy*, 77 Ill.App.3d 895, 396 N.E.2d 836, 33 Ill.Dec. 309 (3rd Dist. Ill.1979); *Illinois Valley Asphalt v. LaSalle National Bank*, 54 Ill.App.3d 317, 369 N.E.2d 525, 12 Ill.Dec. 28 (5th Dist.1977); *Elmore v. Blume*, 31 Ill.App.3d 643, 334 N.E.2d 431 (3rd Dist. Ill.1975).

■ Ecolab also argues that Count I should be dismissed for failure to state the warranty terms. The rule in Illinois is as follows:

> Under the theory of express warranty, an actionable claim must be based on an affirmation of fact or a promise which is not a statement representing merely the seller's opinion or commendation, and which is false. (Citation omitted).

*Elmore*, 334 N.E.2d at 433.

> The Complaint state in relevant part:
>
> That at the said time, agents, employees or representatives of the defendant represented to plaintiff, its agents, employees, or representatives, that it would not be necessary to empty the storage bins in order to perform the fumigation as the chemicals to be used would not harm the flour in said bins.

*See*, Plaintiff's First Amended Complaint filed October 10, 1990, Document No. 17. This Court agrees with the Magistrate's determination that this pleading is sufficient to give notice of the claim as required under Rule 8 of the Federal Rule of Civil Procedure.

### COUNTS II AND III

■ Ecolab contends that Counts II and III of Oak State's Amended Complaint alleging negligence and res ipsa loquitur are tort theories which seek recovery of economic damages which are barred under the *Moorman* economic loss doctrine. *See, Moorman Manufacturing Company v. National Tank Company*, 91 Ill.2d 69, 435 N.E.2d 443, 61 Ill.Dec. 746 (S.Ct.Ill.1982).

Ecolab asserts that because it supplied a service rather than a good it is impossible to claim an injury from the alleged product supplied as the chemicals used by Ecolab in fumigating are merely incident to its service. Thus, Ecolab maintains that the Court must look to recent court decisions which determine the applicability of the economic loss doctrine to service professions. Ecolab contends that it is clear that the Illinois Supreme Court and appellate courts apply the *Moorman* economic loss doctrine to service professions. *See, 2314 Lincoln Park West Condominium Association v. Mann*, 136 Ill.2d 302, 555 N.E.2d 346, 144 Ill.Dec. 227 (S.Ct.Ill.1990); *Collins v. Reynard*, 195 Ill.App.3d 1067, 553 N.E.2d 69, 142 Ill.Dec. 719 (4th Dist.Ill. 1990).

It is true that Illinois courts apply the *Moorman* economic loss doctrine to service professions. However, this does not necessarily mean that the economic loss doctrine will preclude recovery in all cases. In the *Lincoln Park* case, the Illinois Supreme Court stated:

> The plaintiff does not deny that the recovery requested in the present action is for what we have termed economic loss. The plaintiff is seeking an award of damages for the cost of repairing defects in the property, *and there is no contention that the personal injury or damage to other property has resulted.* Like the plaintiffs in *Redarowicz [v. Ohlendorf,* 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982) ], *Foxcroft [Townhome Owners Association v. Hoffman Rosner Corp.,* 96 Ill.2d 150, 70 Ill.Dec. 251, 449 N.E.2d 125 (1983) ], and *Morrow [v. L.A. Goldschmidt Associates, Inc.,* 112 Ill.2d 87, 96 Ill.Dec. 939, 492 N.E.2d 181 (1986) ], the plaintiff in the present case seeks compensation for the cost of repairing certain defects allegedly occurring in the construction of the condominium unit owners' residences.

*Lincoln Park,* 555 N.E.2d at 351, 144 Ill. Dec. at 232 (emphasis added). Thus, the reason that the economic loss doctrine was held to bar recovery in the *Lincoln Park* case was because the plaintiff in that case only sought economic damages. The court

did not hold that damages were never recoverable in a case involving services or professional malpractice. To the contrary, the court stated:

> While we do not intend in the present case to determine the future application of *Moorman* in all areas of professional malpractice, we must reject the plaintiff's theory that denial of the negligence claim against the present architect would signal in general the end of malpractice recovery in tort.

*Id.* 555 N.E.2d at 353, 144 Ill.Dec. at 234.

The question in this case is simply whether or not Oak State is seeking damages for an economic loss or for something else. In *Moorman,* the Illinois Supreme Court defined economic loss as follows:

> "Economic loss" has been defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits— *without any claim of personal injury or damage to other property ..."* (citation omitted), as well as "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." (Citation omitted). These definitions are consistent with the policy of warranty law to protect expectations of suitability and quality.

*Moorman,* 435 N.E.2d at 449, 61 Ill.Dec. at 752 (emphasis added).

In this case, Oak State seeks damages for loss of the flour, replacement of the tainted food products, loss of good will, and lost profits. Oak State contends that there has been damage to "other property" because of the damage to the flour which caused the other damage.

This Court agrees with Oak State. The product in this case was the service provided. However, the service has various components. The service included the selection of the appropriate chemicals to use, the actual fumigation of the flour bins, and the use of the chemicals themselves. The flour was not part of the product provided;

therefore, there was damage to "other property" in this case.

## CONCLUSION

In light of the foregoing, this Court DE-NIES Ecolab's Motion to Dismiss (# 5) and AFFIRMS the recommendation of the Magistrate.